In the Matter of DONALD V. HUNTER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 13, 1986

## APPEARANCES OF COUNSEL

*Claudio B. Bergamasco* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*Bernard F. Duhan* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Donald V. Hunter was admitted to practice on June 22, 1955 as an attorney and counselor-at-law in the State of New York by the Appellate Division of the Supreme Court, Second Judicial Department. At all times relevant herein, he has maintained an office for the practice of law within the First Judicial Department.

Petitioner Departmental Disciplinary Committee moves for an order confirming the findings of fact and conclusions of law of the Hearing Panel that respondent has been guilty of conduct involving fraud, deceit or misrepresentation in violation of Code of Professional Responsibility DR 1-102 (A) (4), conduct prejudicial to the administration of justice in violation of DR 1-102 (A) (5), conduct adversely reflecting on his fitness to practice law in violation of DR 1-102 (A) (6), neglect in violation of DR 6-101 (A) (3), and failing to comply with Judiciary Law § 468-a and Rules of the Chief Administrator of the Courts § 118.1 (22 NYCRR). In that connection, the Hearing Panel reprimanded respondent and forwarded the matter for our consideration with a recommendation that he be disbarred.

The charges against respondent consisted of 16 counts of professional misconduct. Six of these counts alleged that he had failed to answer inquiries involving a complaint filed against him with the attorney disciplinary authorities in Connecticut and, in four instances, failing to submit written responses to complaints filed with the Committee. Seven counts charged respondent with neglecting various legal matters entrusted to him. In another count, it was asserted that respondent, for the purpose of misleading a client and/or third parties, falsely certified in writing that a particular legal proceeding was then pending. In the final two counts, he was charged with failing to file a registration statement with the Office of Court Administration and failing to remit his attorney registration fee.

Although respondent filed an answer denying that he had

been guilty of any professional misconduct, he did not substantially dispute the factual allegations contained in the notice of charges. The matter was then heard by a Hearing Panel on June 9, 1986, July 14, 1986, and July 21, 1986. At the conclusion of the hearing, one charge was withdrawn and three were dismissed. The remaining 12 charges were sustained. Specifically, it was determined that:

During or about August of 1984, Jean D'Arc Nazzal filed a complaint against respondent with the Grievance Committee for the Stamford-Norwalk Judicial District in Connecticut. On or about September 10, 1984, the Nazzal complaint was forwarded by the Stamford Grievance Committee to respondent with a cover letter requesting that he answer the complaint, but no response was submitted thereto. Thereafter, another letter was sent to him asking that he contact the Grievance Committee. Respondent did not reply to this communication. The Grievance Committee subsequently referred the Nazzal complaint to the Connecticut Statewide Grievance Committee to investigate whether respondent had engaged in the unauthorized practice of law.

On or about November 20, 1984, the Connecticut Statewide Committee sent respondent another copy of the complaint and supplemental information from Ms. Nazzal, together with a cover letter requesting an explanation. Respondent, however, did not respond and also failed to answer a subsequent communication from the Connecticut Committee. As a result, the Deputy Sheriff of Fairfield County, on or about February 14, 1985, personally served him with a letter from the Committee dated February 4, 1985, along with certain enclosures. Respondent also did not reply to this letter. On or about April 19, 1985, the Connecticut Committee wrote to respondent advising him that an investigative hearing had been scheduled for May 6, 1985 with respect to the unauthorized practice of law complaint. Despite receiving notice of the hearing, respondent did not appear.

Although the Connecticut Committee ultimately dismissed the unauthorized practice of law complaint, on or about June 7, 1985, it filed a complaint with the Departmental Disciplinary Committee of this court based upon respondent's failure to cooperate with the Connecticut Committee. The Departmental Disciplinary Committee thereupon forwarded the Connecticut Committee's complaint to respondent asking for a response within 20 days. None was forthcoming. On or about August 18, 1985, the Committee sent him a letter reminding

him of his failure to submit a response to the complaint of the Connecticut Committee. Once again, respondent did not avail himself of the opportunity to reply. On or about August 26, 1985, the Committee wrote yet another letter to respondent giving him additional time to respond. He ignored this communication as well.

On or about July 9, 1985, Charles Nalbone filed a complaint against respondent with the Departmental Disciplinary Committee. The complaint was forwarded to respondent on or about August 19, 1985 with a cover letter directing him to answer within 20 days. He did not submit a response. Consequently, on or about September 10, 1985, the Committee wrote to him advising that he had not yet furnished a reply to the Nalbone complaint and demanding that he submit a response. He did not do so.

On or about July 19, 1985, Lorenzo Carullo filed a complaint against respondent with the Departmental Disciplinary Committee. The complaint was forwarded to respondent on or about August 12, 1985 with a cover letter requesting a response. Respondent, consistent as always, did not answer. On or about September 10, 1985, the Committee sent another letter notifying him that he had not yet responded to the Carullo complaint and giving him more time to reply. Once again, no answer was provided.

On or about September 4, 1985, Randy A. Dusek, Esq., filed a complaint against respondent with the Committee. As in the preceding situations, respondent failed to submit any response despite being given several opportunities to do so.

The Hearing Panel also made the following fact findings:

In July of 1983, Ibrahim Nazzal retained respondent to assist Mr. Nazzal and his family in preparing and filing the necessary papers to obtain their United States citizenship. Accordingly, Mr. Nazzal paid respondent the sum of $500 which, represented, *inter alia,* the latter's legal fees. The application papers were completed and, on or about October 7, 1983, turned over to respondent, along with a check for $140 to cover the application fees. Respondent, however, did not file the application papers with the Immigration and Naturalization Service. In July of 1984, in the course of a telephone call to the Immigration and Naturalization Service, Ms. Nazzal learned that her and her family's citizenship application papers had not been filed. The following month, respondent, at Ms. Nazzal's request, returned all of the original application

papers. These papers, except for those pertaining to Ibrahim Nazzal, who had died in the interim, were thereafter forwarded to the Immigration and Naturalization Service by Congressman Stewart B. McKinney. On or about January 21, 1985, respondent refunded the legal fees which he had received in July of 1983.

Respondent was retained to represent Charles Nalbone in a hack license and medallion revocation proceeding instituted against Mr. Nalbone by the New York City Taxi and Limousine Commission in or about November of 1981. In May of 1982, the presiding Administrative Law Judge issued his report in the matter and recommended that Mr. Nalbone's medallion and hack license be revoked. In July of 1982, the recommendation was adopted by the Taxi and Limousine Commission. A proceeding to seek judicial review of the decision revoking Mr. Nalbone's medallion and hack license was never commenced.

After the Taxi and Limousine Commission issued its ruling, Mr. Nalbone continued to operate his taxi cab but was frequently stopped by the police and/or taxi inspectors. Believing that written proof of an appeal from the revocation decision would persuade police officers and taxi inspectors not to issue summonses or otherwise disturb him, Mr. Nalbone asked respondent to provide him with such written proof for the express purpose of showing it to the police and taxi inspectors in order to avoid trouble. Notwithstanding the fact that respondent knew that no proceeding was pending and that Mr. Nalbone intended to use the same to convince police officers and taxi inspectors not to take any action against him for driving and operating a taxi cab without a medallion and hack license, respondent, on or about February 24, 1983, provided Mr. Nalbone with a "certificate" signed by himself stating "that a proceeding is now pending between plaintiff CHARLES NALBONE as petitioner and NEW YORK CITY TAXI & LIMOUSINE COMMISSION as respondent to compel compliance by the TAXI & LIMOUSINE COMMISSION with its own rules and regulations and to continue and restore to the petitioner all of the *indicia* of his right and full permission to operate a medallion taxi within and from the City of New York."

Respondent represented Genizah Fund, Ltd., and its president, Joel Bresslauer, in an action commenced by Ki Y Gallagher. In June of 1984, summary judgment was granted in favor of the plaintiff against defendant Genizah. Respondent thereafter continued to represent said defendants in

postjudgment supplementary proceedings. In October of 1984, after entry of judgment against Genizah, the defendants received information subpoenas and prepared responses to them. The completed responses were typed, signed and turned over to respondent. Although respondent informed Joel Bresslauer that "everything had been taken care of", respondent did not forward the responses to the information subpoenas to the plaintiff's attorney. Therefore, in November of 1984, an order to show cause was served on Joel Bresslauer seeking, *inter alia,* to hold Genizah in contempt for failure to answer the information subpoenas. Bresslauer forwarded the order to show cause to respondent who advised Bresslauer that he would tend to the matter. However, respondent did not answer the contempt motion, and the defendants were noted in default on November 30, 1984, the return date of the motion. On or about April 12, 1985, Judge Lester Evens granted the motion to punish Genizah for contempt and ordered that the Sheriff arrest Joel Bresslauer as president of Genizah. In August of 1985, Genizah and Joel Bresslauer moved by order to show cause to vacate Judge Evens' April 12, 1985 order, citing respondent's neglects in the matter. Genizah and Bresslauer were represented by Gerald M. LaBush on the motion. Respondent executed an affidavit in support of the motion which attested to the truth and accuracy of the statements contained in Mr. Bresslauer's accompanying affidavit.

Finally, respondent has not filed with the Office of Court Administration a registration statement as required by Judiciary Law § 468-a (1) and Rules of the Chief Administrator of the Courts § 118.1 (22 NYCRR). He has also never remitted the registration fee to the Office of Court Administration as mandated by Judiciary Law § 468-a (4) and Rules of the Chief Administrator of the Courts § 118.1 (f [now g]) (22 NYCRR).

It should be noted that respondent has a history of prior discipline. In December of 1967, he was admonished for neglecting a legal matter entrusted to him, failing to communicate with his client and not responding to requests by the Grievance Committee for information in connection with the underlying complaint. On January 29, 1976, the Appellate Division, First Department, censured respondent for neglecting to institute intestacy proceedings in a matter in which he undertook to represent an estate and failing to cooperate fully with the Committee on Grievances (51 AD2d 49).

Respondent, in response to the petition by the Departmental Disciplinary Committee, attempts to minimize the seriousness

of his misconduct, claiming that none of his clients was irrevocably harmed and that he himself did not profit unjustly at the expense of the complainants. He also appears to offer as mitigation the testimony of a psychologist, who had no more than an hour's consultation with respondent, to the effect that respondent might have some sort of mental block or tendency to procrastinate. However, the psychologist admitted that he could not draw a clear and definite conclusion as to whether respondent did indeed suffer from a psychological problem and what that condition was. Respondent, therefore, bases his request for a reduction in the recommended sanction of disbarment to censure on the possibility that he suffers, not from a clinical emotional disorder, but from some sort of mental block. Yet, even if we were to accept the existence of a block which would cause respondent to ignore repeated accusations of misconduct and make him unable to attend to his responsibilities to clients, that is certainly sufficient reason to conclude that respondent should not be permitted to continue in a profession where the ability to act and respond in a responsible and timely manner is essential.

In view of respondent's long-standing pattern of insensitivity to his legal and ethical obligations, as evidenced by his prior disciplinary history and the numerous instances of misconduct documented in the record of the instant proceeding, respondent has shown himself to be unfit to continue in the practice of law.

Therefore, the petition by the Departmental Disciplinary Committee is granted. The findings of fact and the conclusions of law of the Hearing Panel are confirmed, and respondent is disbarred and his name is hereby stricken from the roll of attorneys and counselors-at-law, effective immediately.

Ross, J. P., Fein, Milonas, Kassal and Wallach, JJ., concur.

Respondent's name is stricken from the roll of attorneys and counselors-at-law in the State of New York.