The PEOPLE of the State of
Colorado, Complainant,

v.

Joseph F. MUTO, Respondent.

No. 02PDJ077.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

April 9, 2003.

Opinion by Presiding Disciplinary Judge,
ROGER L. KEITHLEY, and Hearing Board
Members MARILYN J. DAVID, and E.
STEVEN EZELL, both members of the bar.

## REPORT, DECISION AND IMPOSITION OF SANCTION

### SANCTION IMPOSED: ATTORNEY DISBARRED

A Sanctions Hearing pursuant to C.R.C.P.
251.15(b) was held on February 13, 2003,
before a Hearing Board consisting of the
Presiding Disciplinary Judge ("PDJ") and
two Hearing Board Members, Marilyn J.
David, and E. Steven Ezell, both members of
the bar. Fredrick J. Kraus, Assistant Regulation Counsel, represented the People of the
State of Colorado (the "People"). Joseph F.
Muto, the respondent ("Muto"), appeared by
telephone.

The People filed the Complaint in this matter on September 20, 2002. The Citation and Complaint were sent via regular and certified mail to the respondent on the same date. The People filed a Proof of Attempted Service on November 5, 2002, indicating that the Citation and Complaint were sent to both of Muto's last known addresses. The Citation and Complaint sent via certified mail were returned to the Office of Attorney Regulation Counsel unclaimed, and the documents sent via regular mail were not returned. Muto failed to file an Answer or otherwise respond to the Complaint.

Upon the People's motion, by order dated December 5, 2002, the PDJ granted default as to the facts set forth in the Complaint, which were deemed admitted, and as to the violation of the claims set forth therein, which were deemed established. Muto did not respond to the motion for default. Muto was provided notice of the entry of default against him.

At the Sanctions Hearing, the People's exhibits 1 through 3 were admitted into evidence. The Hearing Board considered the exhibits, the facts admitted by the entry of default, and the People's argument, and made the following findings of fact which were established by clear and convincing evidence.

## I. FINDINGS OF FACT

Joseph F. Muto has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on May 31, 1994, and is registered upon the official records of the Supreme Court, attorney registration number 24164. He is subject to the jurisdiction of this Court pursuant to C.R.C.P. 251.1(b).

On March 19, 2002, the New York Supreme Court, Appellate Division, issued a *per curiam* decision affirming the decision of the Referee and the Hearing Panel of the Departmental Disciplinary Committee for the First Judicial Department in the county of New York disbarring Muto from the practice of law in the State of New York. A copy of that decision is attached hereto as exhibit A.

## II. CONCLUSIONS OF LAW AND IMPOSITION OF SANCTION

■ Under claim I of the Complaint the People seek imposition of the same discipline under the reciprocal discipline provisions of C.R.C.P. 251.21. The same discipline that was imposed in the foreign jurisdiction shall be imposed in Colorado unless certain exceptions exist. *People v. Calder*, 897 P.2d 831, 832 (1995).

C.R.C.P. 251.21(d) provides in part:

At the conclusion of proceedings brought under this Rule, the Hearing Board shall issue a decision imposing the same discipline as was imposed by the foreign jurisdiction, unless it is determined by the Hearing Board that:

(1) The procedure followed in the foreign jurisdiction did not comport with requirements of due process of law;

(2) The proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Hearing Board cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction;

(3) The imposition by the Hearing Board of the same discipline as was imposed in the foreign jurisdiction would result in grave injustice; or

(4) The misconduct proved warrants that a substantially different form of discipline be imposed by the Hearing Board.

■ Under the provisions of C.R.C.P. 251.21(d), if the respondent attorney seeks to challenge the validity of the disciplinary order entered by the foreign jurisdiction, the attorney must file with the PDJ an Answer and a full copy of the record of the disciplinary proceedings which resulted in the imposition of that disciplinary order within twenty days after service of the Complaint. Muto neither answered the Complaint nor filed the requisite documentation to enable him to challenge the New York disbarment order. Accordingly, Muto is foreclosed from challenging the validity of the New York disbarment order.

A final adjudication in another jurisdiction of attorney misconduct constituting grounds for discipline conclusively establishes the

misconduct for purposes of attorney disciplinary proceedings in Colorado. *See* C.R.C.P. 251.21(a). The disbarment order issued by the New York Supreme Court Appellate Division constitutes such a final adjudication.

Having reviewed the New York Supreme Court Appellate Division's order of disbarment, the Hearing Board finds that none of the exceptions found in C.R.C.P. 251.21(d) are applicable and it is therefore bound to impose the same discipline as imposed by New York.

### III. ORDER

It is therefore ORDERED:

1. JOSEPH F. MUTO, attorney registration 24164, is DISBARRED from the practice of law in the State of Colorado effective thirty-one days from the date of this order, and his name shall be stricken from the roll of attorneys licensed to practice law in this State.

2. Muto is Ordered to pay the costs of these proceedings. The People shall submit a Statement of Costs within ten (10) days of the date of this Order. Muto shall have ten (10) days thereafter to submit a response to the Statement of Costs.

### EXHIBIT A

SUPREME COURT, APPELLATE DIVISION

First Judicial Department, January 2002

Eugene Nardelli, Justice Presiding

David B. Saxe

Joseph P. Sullivan

Richard W. Wallach

David Friedman, Justices

--- X

In the Matter of Joseph F. Muto (admitted as Joseph Francis Muto), an attorney and counselor-at-law:

Departmental Disciplinary Committee for the First Judicial Department, Petitioner,

Joseph F. Muto, Esq., Respondent.

M–6977

--- X

Disciplinary proceedings instituted by the Departmental Disciplinary Committee for the First Judicial Department. Respondent, as Joseph Francis Muto, was admitted to the Bar at a Term of the Appellate Division of the Supreme Court for the Third Judicial Department on January 27, 1987. By an unpublished order of this Court entered on February 7, 2001 (M 762) a Referee was appointed to conduct a hearing and file a report on formal charges against respondent.

Sherry K. Cohen, of counsel (Thomas J. Cahill, Chief Counsel) for petitioner.

Respondent, *pro se.*

Motion No. 6977—January 29, 2002

*In the Matter of Joseph F. Muto, An Attorney*

PER CURIAM

Respondent Joseph F. Muto was admitted to the practice of law in the State of New York by the Third Judicial Department on January 27, 1987, as Joseph Francis Muto. Respondent is also admitted to practice in Colorado. At all times relevant to the charges here at issue, respondent maintained an office for the practice of law within the First Judicial Department.

On or about February 27, 2001, petitioner Departmental Disciplinary Committee ("DDC") served respondent with a Notice and Statement of Charges charging respondent with 43 counts of professional misconduct in connection with his immigration law practice. Thirty-six of the charges relate to respondent's alleged neglect of matters in which he represented 17 clients in proceedings before the United States Immigration Court. The remaining charges are based on respondent's alleged violations of trust account rules in connection with two IOLA accounts, and his alleged failure to comply with the address reporting requirements of the OCA. It is charged that these alleged acts of respondent constituted violations of several Disciplinary Rules ("DR") of the New York Code of Professional Responsibility, to wit: DR 1–102(A)(4), (5) and (7) (conduct

involving dishonesty, fraud, deceit or misrepresentation, prejudicial (sic) to the administration of justice, and adversely reflecting on one's fitness to practice law); DR 3–101(A) (aiding the unauthorized practice of law); DR 6–101(A)(2) and (3) (handling a legal matter without adequate preparation under the circumstances and neglect of a legal matter); DR 7–101(A)(1) and (3) (failing to seek a client's lawful objectives and intentionally prejudicing or damaging a client during the course of representation); DR 7–106(A) (disregarding a ruling of a tribunal); and DR 9–102(A), (B), (C)(4), (D), (E), (I), and (J) (improper commingling of trust funds; improper maintenance of a trust account; failing to promptly deliver property a client is entitled to receive; failing to keep proper bookkeeping records and to produce such records as required by law; writing a check payable to "cash" from an IOLA account). Respondent filed an answer, dated March 23, 2001, denying all charges.

In June 2001, seven days of hearings were held before Referee John Horan, Esq. The DDC staff called 12 witnesses. Respondent, who appeared *pro se* at the hearing, testified on his own behalf. The Referee, who credited testimony of the DDC witnesses and discredited most of respondent's testimony, sustained each of the 43 charges and recommended the sanction of disbarment. A Hearing Panel of the DDC heard oral argument on November 8, 2001, and subsequently issued a report, dated November 19, 2001, unanimously confirming the Referee's findings of fact and conclusions of law, and concurring in the Referee's recommendation that respondent be disbarred. The DDC now moves for an order pursuant to NYCRR § 603.4(d), confirming the findings of fact and conclusions of law of the Referee and the Hearing Panel, and imposing the sanction of disbarment.

After reviewing the record, we agree that all 43 charges against respondent were properly sustained, and that the sanction of disbarment should be imposed. Since 1997, respondent has purported to specialize in representing illegal immigrants, chiefly from China, who seek political asylum in the United States. Through the testimony of several of respondent's former clients and attorneys familiar with these matters, the DDC staff showed that these immigrants are brought into the United States by a series of middlemen known as "snakeheads," who hand the immigrants over to an "agency" when they reach their destination in this country. The immigrant, lacking any knowledge of either the English language or the American legal system, then becomes completely dependent on his "agency," which provides him with a job, a place to sleep, translators, and legal representation in immigration matters. The non-lawyer "agency" generally performs the actual legal work, and retains an attorney to front for it in the Immigration Court. An attorney retained by an "agency" to represent an illegal immigrant client generally has little or no contact with the client, exercises no control over the case, and serves at the pleasure of the "agency," which pays his fee. The Referee concluded that respondent lent himself to this "insidious system."

Based on the testimonial and documentary evidence presented by the DDC staff, the Referee made findings, confirmed by the Hearing Panel, that respondent engaged in the following kinds of professional misconduct, among others, in representing 17 immigrant clients:

(1) accepting client referrals from non-lawyers, and relying on non-lawyers he did not supervise to perform legal work, such as consulting with the client;

(2) in most cases, undertaking the representation without ever discussing the case directly with the client in the presence of a translator, and, in some cases, without ever meeting the client at all;

(3) filing with the courts affidavits purportedly signed by clients, which the clients in fact had not signed;

(4) repeatedly failing to appear at hearings in violation of court directives that he appear, and after giving the courts assurances that he would appear;

(5) filing grossly inadequate and/or untimely motions to change venue or to re-open orders of deportation, which motions were denied;

(6) failing to file motions after his office represented to the clients that such motions would be made;

(7) failing to advise clients of hearing dates, or having his office advise clients that it was unnecessary for them to appear at scheduled hearings, and failing to advise clients of dispositions of motions of which they should have been apprised, such as motions for change of venue;

(8) arranging for other attorneys to appear in his stead at hearings, without informing the clients or obtaining their consent, and without adequately preparing the other attorneys for such appearances; and

(9) failing to return important original documents relating to a client's asylum claim.

In addition, the Referee found that respondent made affirmative misrepresentations to the Immigration Courts and to the DDC in order to conceal his professional misconduct, in a number of cases seeking to blame the client for his own professional failures. Notably, although respondent's neglect resulted in the entry of orders of deportation against the clients who testified in this proceeding, those clients were able to salvage their cases by retaining, at higher cost, new attorneys who made successful motions to re-open.

The Referee also found that respondent engaged in the following misconduct relating to his trust accounts: (1) he wrote a check payable to "cash" from one of his IOLA accounts; (2) he failed to keep and produce to the DDC proper bookkeeping records for that account or a second IOLA account; (3) he accepted a $30,000 check from an individual for deposit in one IOLA account, which funds purportedly belonged to an unnamed third party, and disbursed the funds in cash to the individual who gave him the check without knowing or seeking to know the unnamed third party; and (4) he used one IOLA account solely as a business operating account. Finally, the Referee found that respondent failed to report his correct business address in two OCA registration statements.

To the extent respondent sought to deny the charges or to excuse his admitted misconduct, the Referee found his testimony incredible. Like the Hearing Panel, we see no reason to disturb this finding.[1]

In support of his argument that his punishment should be limited to public censure or reprimand, respondent proffers two points as supposed mitigation of his misconduct. First, he points out that during the period at issue in some of the charges, his mother had been terminally ill in Syracuse, requiring him to travel there frequently up to the time of her death in February 1999. As the Hearing Panel noted, however, respondent failed to demonstrate any causal connection between his mother's illness and his professional misconduct. Second, respondent asserts that his failures to appear for hearings in New Orleans (the venue of a number of his clients' cases) should be deemed excused due to his fear of flying. Respondent claims that each time he arranged to travel to New Orleans, he believed he would be able to board the airplane, but he ultimately was unable to do so. We agree with the Referee and the Hearing Panel that, under the circumstances of this case, the matter of respondent's fear of flying is more aggravating than it is mitigating. Respondent, in spite of his awareness that he suffered from this condition, not only took on matters involving hearings in a distant city, he failed to advise his clients of the risk that he would be unable to appear at such hearings due to his disability.

While genuinely mitigating factors are absent, aggravating factors are clearly present. In this connection, it is significant that respondent had accumulated a substantial disciplinary history before any of the events on which the present charges are based. On December 23, 1994, the Fourth Department suspended him, on default, pending further proceedings (*Matter of Muto*, 210 A.D.2d 1008, 621 N.Y.S.2d 994), and on December 22, 1995, that court suspended him for one year from the date of his interim suspension, and until further order of the court, for neglect and use of client funds for personal

---

**1.** Respondent challenges only two of the 43 charges against him as based on insufficient evidence. We agree with the Hearing Panel that the charges in question were supported by sufficient evidence.

purposes (*Matter of Muto,* 218 A.D.2d 328, 636 N.Y.S.2d 703). Before respondent was reinstated to the bar on December 30, 1996 (*Matter of Muto,* 234 A.D.2d 1014, 652 N.Y.S.2d 462), the Fifth District Grievance Committee issued a Letter of Admonition to him in March 1996, based on 10 different client complaints of neglect pre-dating his suspension. Respondent's culpability is further aggravated by his lack of candor in these proceedings, and by his lack of genuine remorse and contrition, as evidenced by his continued mantra-like recitation, even in this Court, of the baseless assertion that he rendered "low cost high quality" representation to his ill-served clients. As the Referee observed, respondent's repetition of this empty claim "has an air of delusion about it."

In sum, we confirm the findings of fact and conclusions of law sustaining all 43 charges against respondent. Further, we agree with the Referee and the Hearing Panel that disbarment is the appropriate sanction in this case. As aptly noted by the Referee, respondent's conduct demonstrates a "truly shocking disregard for his clients' welfare in what is for them one of the most important undertakings of their lives." Respondent, who already has a substantial disciplinary history based on neglect of client matters during an earlier period of his career, has been proven in this proceeding to have neglected the representation of no less than 17 clients in matters of the gravest significance, involving possible loss of their personal liberty and deportation. Through this "long-standing pattern of insensitivity to his legal and ethical obligations, ... respondent has shown himself to be unfit to continue in the practice of law" (*Matter of Hunter,* 120 A.D.2d 214, 220, 508 N.Y.S.2d 176; *see also, Matter of Evangelista,* 233 A.D.2d 1, 662 N.Y.S.2d 48; *Matter of Kranis,* 219 A.D.2d 278, 640 N.Y.S.2d 523, *lv denied* 89 N.Y.2d 805, 653 N.Y.S.2d 917, 676 N.E.2d 499; *Matter of Stenstrom,* 194 A.D.2d 277, 605 N.Y.S.2d 603). In the words of the Hearing Panel, respondent "is a danger to any client who might retain him." The protection of the public demands that respondent be removed from the legal profession.

Accordingly, the petition of the DDC for an order pursuant to 22 NYCRR § 603.4(d) should be granted, the findings of fact and conclusions of law of the Referee and the Hearing Panel confirmed, and respondent disbarred from the practice of law in this State and his name stricken from the roll of attorneys and counselors-at-law, effective immediately.

At a Term of the Appellate Division of the Supreme Court held in and for the First Judicial Department in the County of New York on March 19, 2002.

Present: Hon. Eugene Nardelli, Justice Presiding
David B. Saxe
Joseph P. Sullivan
Richard W. Wallach
David Friedman, Justices

--- X

In the Matter of Joseph F. Muto (admitted as Joseph Francis Muto), an attorney and counselor-at-law:

Departmental Disciplinary Committee for the First Judicial Department, Petitioner,

Joseph F. Muto, Esq., Respondent.

--- X

An unpublished order of this Court having been entered on February 27, 2001 (M–762) appointing a Referee to conduct a hearing and file a report in the above-referenced proceeding pursuant to Section 605.12(f) of the Rules of the Court on formal charges against respondent (who, as Joseph Francis Muto, was admitted to practice as an attorney and counselor-at-law in the State of New York at a Term of the Appellate Division of the Supreme Court for the Third Judicial Department on January 27, 1987),

And the Departmental Disciplinary Committee for the First Judicial Department by Thomas J. Cahill, its Chief Counsel (Sherry K. Cohen, of counsel), having presented a petition to this Court on January 29, 2002 seeking an order, pursuant to Judiciary Law § 90 and 22 NYCRR 603.4(d), confirming the Report of the Hearing Panel, which confirmed the Referee's findings of fact and conclusions of law and recommended sanction of disbarment,

And respondent, *pro se,* having interposed an answer and reply affirmation stating, *inter alia,* that disbarment is too harsh a sanction and that a lesser sanction such as a public censure or reprimand be imposed,

(M-6977)        -2-        March 19, 2002

Now, upon reading and filing the papers with respect to the petition, and due deliberation having been had thereon, and upon the Opinion Per Curiam filed herewith, it is unanimously

Ordered that the petition is granted and the Report of the Hearing Panel, which confirmed the Referee's findings of fact and conclusions of law and recommended sanction, is confirmed, and respondent is disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof, and it is further

Ordered that respondent is commanded to desist and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another; that respondent is forbidden to appear as an attorney and counselor-at-law before any court, judge, justice, board, commission or other public authority; that respondent is forbidden to give to another an opinion as to the Law or its application or any advice in relation thereto, effective the date hereof. Respondent is directed to fully comply with the provisions of Title 22, Section 603.13, of the Rules of this Court, a copy of which is annexed hereto and made a part hereof.