[682 NYS2d 204]

In the Matter of JEFFREY L. FELDMAN (Admitted as JEFFREY LEE FELDMAN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 29, 1998

**APPEARANCES OF COUNSEL**

*Naomi F. Goldstein* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Angelo T. Cometa* of counsel (*Tenzer Greenblatt, L. L. P.,* attorneys), for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Jeffrey L. Feldman was admitted to the practice

of law in the State of New York by the Second Judicial Department on March 6, 1974, as Jeffrey Lee Feldman. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

Respondent was served with a notice and statement of charges dated November 12, 1996, in which it was alleged that he violated Code of Professional Responsibility DR 1-102 (A) (4) and (7) (now [8]), DR 6-101 (A) (3) and DR 7-101 (A) (2) and (3) (22 NYCRR 1200.3, 1200.30, 1200.32). The violations consisted of making material misrepresentations on a loan application, falsifying title search reports, neglecting three legal matters entrusted to him, prejudicing clients in the course of the professional relationship and making significant misrepresentations regarding the status of clients' cases. Following a hearing, all nine charges were sustained by the Hearing Panel, which recommended that respondent be suspended from the practice of law for a period of five years. Petitioner Departmental Disciplinary Committee seeks an order pursuant to 22 NYCRR 603.4 (d) imposing such discipline as this Court deems just and appropriate. For the reasons stated below, we find that the egregious circumstances of respondent's conduct warrant the sanction of disbarment.

Respondent's misconduct spanned a period of seven years and involved four separate matters. The first matter involved respondent's fraudulent conduct in obtaining a personal loan from one of his law firm's clients, the State Bank of India (SBI). Respondent had first obtained a personal loan from another client, the Bank of Seoul (BOS), in order to purchase an apartment. As security for the loan, he pledged his shares in the law firm, turning over a stock certificate representing those shares. Several months later, he secured a loan from SBI for the same purpose, making several false statements in the personal financial statement he completed to obtain the loan; he failed to list the SOB loan as a liability and falsely certified that his interest in the law firm was not yet pledged or assigned. He offered the very same stock to SBI as security, ultimately providing SBI with an invalid certificate representing his shares. Based on this conduct, the Hearing Panel sustained charge one, finding that respondent had engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (A) (4) in obtaining the SBI loan and attempting to conceal his misconduct and elude bank authorities.

A second matter, forming the basis of charges two through four, again involved SBI, this time in the context of respon-

dent's professional relationship with the bank, in connection with its loan to a couple who in turn gave the bank mortgages on two pieces of property. Respondent assured SBI that it held the first mortgages on each parcel. The amount of the loan was later increased and secured by additional mortgages on the same properties. Despite SBI's instructions, respondent failed to obtain foreclosure searches on the properties or forward the search reports to the bank. Several years later, respondent finally had an associate obtain the necessary certificates from Titleserve and mailed them to SBI with a letter indicating again that SBI held the first mortgages on the properties. It was later discovered, by comparing Titleserve's copies of the owners' certificates with those in SBI's file, that respondent had altered the original certificates by deleting the first mortgages held on both properties. The original certificates further revealed that the SBI mortgages had never been recorded, while SBI's certificates indicated that the bank held the first mortgages.

In sustaining charges two and three, the Panel found that by falsely assuring SBI prior to the closing that it would hold the first mortgages on the two properties and by falsifying the certified title search reports, respectively, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (A) (4). In addition, respondent's initial failure to conduct a title search on the properties, his failure to record both the original and the enhancement mortgages and his failure to obtain the foreclosure searches for more than one year were found to constitute neglect of a legal matter entrusted to him, in violation of DR 6-101 (A) (3) (charge four).

Charges five and six relate to respondent's neglect and deceit in a third matter, concerning the Bank of Seoul. A BOS loan to Bibi International, Inc. had been personally guaranteed by Bibi's principals; as partial security for the loan, they gave BOS a lien on an apartment they owned. When the company defaulted on the loan and the principals filed for bankruptcy, respondent represented BOS in the bankruptcy proceeding but failed to answer the summons and complaint on behalf of BOS and to appear at the hearing. A January 1988 judgment found that BOS's lien on the apartment was invalid, null and void, but respondent thereafter falsely stated in his annual status report to the New York State Banking Department that the bankruptcy trustee was still contesting BOS's claim. In August 1989, he sent a status report to BOS's auditor in which he

falsely stated that BOS still had an interest in the apartment and that he was in the process of negotiating a settlement with the bankruptcy trustee pursuant to which BOS would receive proceeds of the sale of the apartment. In reality, respondent had not worked on the matter for almost two years, the trustee had already sold the apartment and BOS had received nothing from the proceeds of the sale.

In sustaining charge five, the panel found that respondent's failure to file an answer in the bankruptcy proceeding and to appear at the hearing constituted neglect of a legal matter entrusted to him and failure to perform his contractual obligation to BOS, resulting in prejudice to BOS, in violation of DR 6-101 (A) (3) and DR 7-101 (A) (2) and (3). As to charge six, alleging that respondent's false assurances to the State Banking Department and BOS's auditor that BOS's lien was still extant and he was actively pursuing the matter, when he had done no work at all and the lien had been extinguished by court order, the panel found that this constituted another instance of conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (A) (4).

Charges seven and eight relate to a loan made by BOS to Mutual Interest Transactions (MIT) in February 1985; MIT's two principal shareholders gave BOS a mortgage in the amount of $200,000 on certain property, and respondent duly recorded this mortgage. The amount of the loan was increased in November 1986 and again in August 1987, reaching the sum of $1.2 million; each time, a mortgage modification agreement was drafted by respondent, reflecting the new amount of the loan and mortgage. Respondent falsely assured BOS that these modification agreements had been filed in a timely fashion, when in fact he did not file either until September 1991, five years after the first modification agreement. Prior to the 1991 filing, however, another bank had been given a mortgage on the same properties, which had been timely recorded. Upon the properties' foreclosure, the alleged superiority of BOS's mortgages—with the exception of the original mortgage in the amount of $200,000—was not recognized.

By falsely assuring BOS that he had timely recorded the mortgage modification agreements, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4) (charge seven), and, by failing to timely record the agreements, respondent had neglected a legal matter entrusted to him and failed to carry out his contractual obligations to his client, resulting in prejudice

to the client in violation of DR 6-101 (A) (3) and DR 7-101 (A) (2) and (3) (charge eight).

Finally, based on all of the foregoing conduct, the panel concluded that respondent had engaged in conduct adversely reflecting on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]) (charge nine).

In determining the appropriate sanction for respondent's misconduct, we have considered both the aggravating and mitigating factors noted by the Hearing Panel in its report. Respondent points to his previously unblemished record and pressures in his professional life during the time at issue due to the illness and death of one of his partners. At the same time, we note that the panel found respondent's professed remorse for his misconduct to be "unconvincing," and that it rejected his attempt to minimize his conduct as merely neglect of client matters. Rather, the panel determined, and we find that the record abundantly demonstrates, that respondent's misconduct was pervasive and venal, encompassing not simply failure to pursue various client matters, but affirmative misrepresentations, deceit and forgery in not one but four separate matters. Moreover, this conduct was not confined to professional matters but extended to personal dealings for respondent's personal gain.

The Hearing Panel recommends a five-year suspension, citing three instances where such sanction has been imposed on an attorney who both neglected a matter and engaged in deceitful behavior, including forgery, to conceal the neglect. The misconduct in each, while forming the basis of numerous charges, concerned only one client and one matter (*Matter of Kantor*, 241 AD2d 103, *lv denied* 92 NY2d 813; *Matter of Nadler*, 229 AD2d 175; *Matter of Roman-Perez*, 195 AD2d 192, *lv denied* 83 NY2d 756). In another case, similar misconduct warranted disbarment where the attorney displayed a "long-standing pattern of insensitivity to his legal and ethical obligations," including two instances of prior discipline (*Matter of Hunter*, 120 AD2d 214, 220; *see also, Matter of Kranis*, 219 AD2d 278, *lv denied* 89 NY2d 805). In the instant case, we find that the severity and extent of respondent's conduct in these four matters, particularly given his "unconvincing" remorse and the absence of compelling mitigating circumstances, warrant disbarment.

Accordingly, the Hearing Panel's findings of fact and conclusions of law should be confirmed, the recommended sanction should be disaffirmed, and respondent should be disbarred,

and his name should be stricken from the roll of attorneys and counselors-at-law.

SULLIVAN, J. P., MILONAS, NARDELLI, RUBIN and TOM, JJ., concur.

Motion granted only insofar as to confirm the Hearing Panel's findings of fact and conclusions of law, and denied as to the recommended sanction, and respondent is disbarred, from practice as an attorney and counselor-at-law in the State of New York, all effective January 27, 1999.