[784 NYS2d 69]

In the Matter of MELINDA E. LOWELL (Admitted as MELINDA EILENE LOWELL), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 9, 2004

### APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*James T. Shed* of counsel), for petitioner.

*Skadden, Arps, Slate Meagher & Flom, LLP*, New York City (*Robert J. Del Tufo* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Melinda E. Lowell was admitted to the practice of law in the State of New York by the Third Judicial Department on June 26, 1980, under the name Melinda Eilene Lowell. From 1996 to the present, she has maintained an office for the practice of law within the First Judicial Department. Respondent was also admitted to the bar in New Jersey in 1981, and at all relevant times herein, maintained an office for the practice of law there.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 603.3, suspending respondent for three years predicated upon similar discipline issued by the Supreme Court of New Jersey by an order filed November 25, 2003 (*In re Lowell*, 178 NJ 111, 835 A2d 679 [2003]), imposing a three-year suspension, retroactive to May 30, 2002. In the alternative, the Committee seeks an order sanctioning respondent as this Court deems appropriate. Respondent does not object to the imposition of reciprocal discipline but urges that such discipline should be coterminous with the disciplinary term imposed in New Jersey.

The New Jersey District II-B Ethics Committee served respondent with two separate disciplinary complaints and an amended complaint charging 48 counts and violations of various Rules of Professional Conduct. Most of the counts involved the charging of excessive fees. The remaining charges alleged that respondent engaged in a course of misconduct over a period of several years which included creating false documents which she then submitted to a court; counseling a client to lie in a cer-

tification and to disobey a court order; directing an employee to work on a client's case and charge the client after the client had discharged her; eliciting false testimony from a witness during trial; making misrepresentations to clients, the court and third parties; failing to refund the unearned portion of a retainer; failing to file a motion for pendente lite relief as requested by a client; failing to notify her adversary of the submission of an insertion made to a stipulation; directing a paralegal in her employ, who formerly worked for respondent's adversary in a pending case, to work on that case, even questioning the paralegal about her adversary's litigation strategy; and billing clients for work done by paralegals at the higher attorney billable rate.

Respondent answered the complaints and six days of hearings, between July 6, 2000 and August 8, 2000, were held before a Special Master at which respondent, represented by counsel, testified.

While the Special Master did not sustain all of the charges against respondent, he sustained 14 of them.* In sustaining these charges, the Special Master reported that:

> "I find that [respondent] has no appreciation of the inappropriateness of her conduct. I find that her testimony throughout the hearing was evasive and not credible. She neither expressed remorse nor did she accept any responsibility for her conduct. She attempted to challenge each of the allegations of misconduct by blaming others, including employees

---

* Specifically, the Special Master found, by clear and convincing evidence, that respondent violated the following New Jersey Rules of Professional Conduct (RPC): RPC 1.2 (d) (counseling or assisting a client in conduct lawyer knows is illegal, criminal or fraudulent); RPC 1.3 (lack of diligence); RPC 1.10 (b) (imputed disqualification); RPC 1.16 (d) (failure to return unearned retainer on termination of representation); RPC 3.3 (a) (1) (knowingly making a false statement of a material fact to a tribunal), (a) (2) (failure to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting an illegal, criminal or fraudulent act by a client), (a) (4) (offering evidence known to be false), and (a) (5) (failure to disclose to a tribunal a material fact with knowledge that the tribunal may tend to be misled by such failure); RPC 3.4 (b) (falsifying evidence or counseling or assisting a witness to testify falsely) and (c) (knowingly disobeying an obligation under the rules of a tribunal); and RPC 8.4 (a) (violating or attempting to violate Rules of Professional Conduct, knowingly assisting or inducing another to do so, or to do so through the acts of another), (b) (committing a criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects), (c) (engaging in conduct involving dishonesty, fraud deceit, or misrepresentation), and (d) (engaging in conduct prejudicial to the administration of justice).

and associates of her firm or her adversaries. I find that her inability to recognize neither the nature nor the severity of her actions to be an aggravating factor."

The Special Master recommended a three-year suspension.

Upon a de novo review of the matter, the Disciplinary Review Board issued a lengthy decision dated October 26, 2001, recommending respondent's disbarment. This sanction was imposed after the Review Board thoroughly discussed the charges and findings against respondent.

Respondent represented the husband in a matrimonial matter. The Disciplinary Review Board found that by submitting to the court an order concerning a psychological exam of the parties' children without notifying the wife's attorney of its terms, she deliberately tried to circumvent the court rules so that her adversary could not object to the order, thereby violating RPC 3.4 (c) (knowingly disobeying an obligation under the rules of a tribunal). Although respondent was not charged with violating RPC 8.4 (d) (engaging in conduct prejudicial to the administration of justice), the Disciplinary Review Board nevertheless found that her conduct violated this rule and amended the complaint to conform to the proof.

Also in this matrimonial action, respondent employed a paralegal who had formerly worked for the law firm which represented the wife. The Disciplinary Review Board found that by requiring the paralegal to work on this case and even questioning her about her adversary's litigation strategies, respondent breached the "screen" between the paralegal and the legal matter in violation of Advisory Committee Professional Ethics Opinion 665. This opinion requires the creation and maintenance of a "chinese wall" separating the paralegal from any association with the matrimonial matter while in respondent's office.

In another matrimonial case, respondent added a sentence to a stipulation signed by her adversary and directed another attorney who worked for her to sign the stipulation containing the addition and to file it with the court, without advising the adversary of the addition. Respondent's associate refused, and the Disciplinary Review Board found that respondent attempted to pressure the associate to alter the stipulation and file it and, but for her refusal, it would have been filed with the court. Therefore, respondent violated RPC 8.4 (a) (knowingly assisting or inducing another to violate the Rules of Professional Conduct) by her attempt to violate RPC 8.4 (d).

In another matter, respondent stipulated and the Disciplinary Review Board concluded that by having her secretary sign her paralegal's name on a certification and then filing the certification with the court without the paralegal's consent respondent violated RPC 3.4 (c).

In 1996, a client paid respondent $5,000 to file a divorce complaint in New York and move for pendente lite support. Respondent never filed a pendente lite motion and was discharged in July 1996. The Disciplinary Review Board found that after her discharge, respondent instructed her paralegal to draft a pendente lite motion, place it in the file and deliver it to the client. Respondent then billed her former client for 15.4 hours of work including four hours for a "draft" of that motion and "review of financials." The Disciplinary Review Board concluded that respondent's conduct violated RPC 8.4 (c) (conduct involving dishonesty, fraud, deceit or misrepresentation), that her failure to file the motion despite her client's request violated RPC 1.3 (lack of diligence), and by failing to return the unearned portion of the retainer she violated RPC 1.16 (d) (failure to return unearned retainer on termination of representation).

In 1991, respondent filed an application for pendente lite relief for another client alleging that the client's father had lent her some $110,000, and attached six promissory notes to that effect. The husband claimed the notes were shams and the money was given to the couple as gifts. The Disciplinary Review Board found that respondent had her client sign fraudulent promissory notes and false certifications which respondent then filed with the court. In addition, respondent elicited false testimony from the wife's father at the divorce trial that the funds were loans and not gifts. By the foregoing conduct, the Review Board found that respondent violated RPC 1.2 (d) (counseling or assisting a client in conduct the lawyer knows is illegal, criminal, or fraudulent), RPC 3.3 (a) (1) (knowingly making a false statement of a material fact to a tribunal) and (a) (4) (offering evidence known to be false or failing to take remedial measures after learning that false evidence has been offered), and RPC 8.4 (c).

On a separate issue, although the court had issued an order restraining the parties from transferring or dissipating assets, respondent assisted her client in cashing bearer bonds in order to pay her legal bill. The Disciplinary Review Board found respondent violated RPC 8.4 (d).

While representing the wife in another matrimonial action, respondent filed a complaint in May 1997 against the husband

seeking unpaid support. The husband was in the process of selling his house and respondent sent a letter to the broker stating that she represented the wife in a pending action and advised the broker that all proceeds from the sale must be held in escrow. However, there was no court order requiring that the proceeds be escrowed and respondent's subsequent application for such an order was denied. The Disciplinary Review Board concluded that respondent's conduct violated RPC 4.1 (a) (1) (making a false statement of material fact or law to a third person) and RPC 8.4 (c).

While the Disciplinary Review Board did not sustain 38 counts of charging clients with excessive fees, it did find that respondent billed various clients for work performed by paralegals at the higher attorney rate. The Review Board characterized this conduct as "misrepresentations" on clients' bills in violation of RPC 8.4 (c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Respondent did not present any evidence in mitigation.

In initially recommending disbarment, the Disciplinary Review Board found respondent's conduct "so egregious" that her "pervasive pattern of deceit and deficiency of character" warranted the most severe discipline. Specifically, the Review Board wrote in its report that:

> "[respondent] displayed an alarming lack of probity in these matters. Furthermore, she showed no appreciation for the basic trust that must exist between opposing counsel. The record is clear that, even at the ethics hearing, [respondent] displayed an arrogant, discourteous attitude toward the presenter, the witnesses and even the district ethics committee that docketed the grievances."

The Review Board also agreed with the Special Master that respondent had no appreciation of the inappropriateness of her behavior, failed to accept responsibility for her actions by blaming everyone but herself, and relentlessly browbeat her employees until they agreed to do things they otherwise would not have done.

Accordingly, the Disciplinary Review Board found that respondent had violated at least 10 provisions of the Rules of Professional Conduct as well as an Advisory Committee Opinion and recommended disbarment.

Thereafter, respondent moved to supplement the record with a report from her treating psychiatrist and letters from family

members, attorneys and clients attesting to her reputation and character. In particular, respondent wished to address the Review Board's statements that at the hearing she was "arrogant" and "discourteous" and showed no appreciation that her behavior was inappropriate. The New Jersey Supreme Court granted respondent's motion and remanded the matter back to the Disciplinary Review Board for reconsideration of the record as supplemented. In addition, the court permitted the Office of Attorney Ethics to make its own submissions. The court also directed respondent, who had represented that she was not practicing law, to refrain from doing so until further order of the court.

Specifically, respondent's psychiatric expert explained in his report that at the time of respondent's hearing (summer 2000), she was on five different large doses of medication since she was suffering from "major depressive disorder, recurrent" and, as of the spring 2002, her major depressive disorder was in "partial remission." Respondent's doctor opined that respondent's medications and condition contributed to the way she projected to others during the hearing. While the psychiatric expert retained by the Office of Attorney Ethics shared the same diagnosis, he concluded that respondent's behavior during the hearing "were manifestations of [her] style of advocacy and presentation as an attorney, and not inevitable and invariable manifestations of her underlying psychiatric disorder."

The Disciplinary Review Board made no finding that respondent's mental condition caused any of the underlying misconduct. Rather, it was offered only to explain her behavior at the hearing before the Special Master and her then apparent lack of appreciation for her wrongdoing or acceptance of responsibility.

Upon reconsideration and by supplemental decision dated October 8, 2003, the Disciplinary Review Board did not modify its decision as to liability. However, with no new evidence submitted with respect to her conduct relating to the underlying charges, the Review Board nevertheless changed its sanction recommendation from disbarment to a three-year suspension. In recommending the reduced sanction, the Review Board considered these factors: respondent had failed to present any mitigating circumstances when the matter was first before the Review Board; the character letters submitted; the evidence of respondent's "severe psychiatric and emotional problems during the ethics hearing"; and the Office of Attorney Ethics' recommendation of a three-year suspension. Given these factors,

the Review Board was no longer convinced that respondent could never again conform her conduct to the high standards required of an attorney, but that her misconduct warranted a lengthy suspension and that, prior to reinstatement, she should submit proof of her mental fitness.

Upon receipt of the Disciplinary Review Board's supplemental decision, the New Jersey Supreme Court issued an order, retroactively suspending respondent for three years from May 30, 2002.

The Departmental Disciplinary Committee now seeks an order finding respondent guilty of misconduct, pursuant to 22 NYCRR 603.3, based upon the findings of misconduct made in the New Jersey disciplinary proceeding. Respondent was provided with sufficient notice that the Departmental Disciplinary Committee was seeking "an order, pursuant to 22 N.Y.C.R.R. § 603.3, suspending [respondent] predicated upon similar discipline issued by a foreign jurisdiction, or, in the alternative, sanctioning respondent as this Court deems appropriate, or granting any other and further relief that is just and proper." She submitted a response in which she concedes none of the defenses enumerated in 22 NYCRR 603.3 (c) are available to her and does not object to the imposition of reciprocal discipline. The findings of misconduct are supported by the record and are accepted by this Court. However, we cannot agree that the sanction New Jersey has imposed is appropriate under these circumstances.

We recognize and support the generally accepted and well reasoned principle that the jurisdiction where a respondent lives and actively practices law at the time of the offense has the greatest interest in the issue and the public policy considerations relevant to such disciplinary actions (*see Matter of Yagman*, 263 AD2d 151 [1999]; *Matter of Reiss*, 119 AD2d 1 [1986]). However, while we respect this long standing policy and tradition, and we always or virtually always impose a reciprocal sanction, we most respectfully—and indeed with some reluctance to deviate from our consistent adherence to the sound policy of reciprocal discipline—must decline to follow the doctrine of reciprocal discipline in this particular matter (*see Matter of Gilbert*, 268 AD2d 67 [2000] [Committee's petition for more severe sanction of six-month suspension rather than three months imposed in New Jersey granted]). Rather, we find ourselves in complete agreement with the original sanction which the New Jersey Disciplinary Review Board imposed because it is completely in

accord with our own precedent in matters involving such egregious patterns of violations of legal and ethical obligations (*see Matter of Heller*, 9AD3d 221 [2004], *lv denied* 3 NY3d 607 [2004] [11 counts of professional misconduct involving conduct prejudicial to the administration of justice, falsely testifying at a deposition, falsely submitting to the Supreme Court a posttrial affidavit, and intentionally engaging in conduct involving fraud, dishonestly, deceit and misrepresentation warranted disbarment over Committee's recommendation of suspension]; *Matter of Weinstein*, 4 AD3d 29 [2004], *lv denied* 3 NY3d 608 [2004] [professional misconduct which included converting and failing to return client funds, drafting and filing false petitions and affidavits, engaging in improper solicitations and charging and collecting excessive fees, despite otherwise unblemished record and character evidence, warranted disbarment]; *Matter of Gadye*, 283 AD2d 1 [2001] [where attorney neglected numerous client matters, engaged in bad faith court filings, failed to comply with court orders, failed to advise clients of conflict of interest issues, and committed acts of fraud, dishonesty, and misrepresentation, disbarment appropriate sanction]; *Matter of Brooks*, 271 AD2d 127 [2000], *lv dismissed* 95 NY2d 955 [2000] [attorney who neglected legal matters, engaged in dishonesty involving clients, fabricated three orders and a bond, neglected numerous client matters, repeatedly failed to comply with court orders and directives, advancing claims he knew were unwarranted, filing documents with false information and false notarization was disbarred]; *Matter of Feldman*, 252 AD2d 76 [1998] [attorney disbarred when, over course of seven years involving four separate matters, he neglected legal matters entrusted to him and engaged in acts of misrepresentation, deceit and forgery in attempting to conceal behavior]; *Matter of Goffe*, 209 AD2d 124 [1995] [under doctrine of reciprocal discipline, attorney disbarred where he was found to have engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, conduct prejudicial to the administration of justice, proffered fabricated or altered evidence to the IRS and the United States Tax Court and lied under oath before the Tax Court]).

Respondent had the opportunity to put in evidence at the original hearing and again thereafter at the supplemental proceeding. Based on the record respondent developed, we find that the higher sanction is appropriate (*see Matter of Gilbert, supra*; *Matter of Dinhofer*, 257 AD2d 326 [1999]; *Matter of Aschheim*, 224 AD2d 149 [1996]). In reaching this determination,

we note that the evidence respondent submitted to supplement the record does not address the underlying conduct giving rise to the charges of professional misconduct. Rather, it was offered only to explain her negative behavior at the hearing. As such, it cannot serve to lessen the sanction for an underlying pattern of conduct as egregious and dishonest as was otherwise established against this respondent. We add and emphasize that we have reached this conclusion only with the greatest regard for our sister state's disciplinary system on the one hand, but with a sincere, profound and respectful disagreement with its supplemental decision reducing respondent's sanction from disbarment to a three-year suspension.

Accordingly, the Committee's petition should be denied to the extent that it seeks to impose a sanction of a suspension of three years and granted to the extent that it seeks findings of misconduct and an alternate sanction, and respondent should be disbarred and her name stricken from the roll of attorneys.

TOM, J.P., SAXE, WILLIAMS, FRIEDMAN and MARLOW, JJ., concur.

Respondent's name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective December 9, 2004.