[831 NYS2d 32]

In the Matter of NANCY BURTON, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 6, 2007

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*James T. Shed* of counsel), for petitioner.

*Chris G. McDonough* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Nancy Burton was admitted to the practice of law in the State of New York by the First Judicial Department on September 26, 1977. At all times relevant to this proceeding, respondent maintained an office for the practice of law in the State of Connecticut, where she was admitted to practice in 1985. Respondent does not practice law in New York.

In this reciprocal discipline proceeding, the Departmental Disciplinary Committee seeks an order disbarring respondent pursuant to 22 NYCRR 603.3, based on an order of disbarment issued by Honorable William Mottolese, Superior Court of Connecticut, Judicial District of Fairfield, at Bridgeport, on November 2, 2001. The Connecticut disciplinary proceeding arose out of respondent's conduct in litigation proceedings before Judge Mottolese. The proceeding itself was commenced in an unorthodox manner in that ordinarily an attorney's misconduct is referred to a local grievance committee for investigation. In this case, however, Judge Mottolese initiated the disciplinary proceeding sua sponte, over which he presided.

The facts underlying the Connecticut proceedings are as follows. Respondent, a land use lawyer, was retained by Joseph and Lenore Sullivan in connection with their desire to challenge a determination by the Town of Monroe Zoning Board permitting the construction of a residential subdivision. The Sullivans also sought to recruit local community members to join as coplaintiffs in an appeal of the Board's determination. Following a meeting at which respondent spoke, approximately 20 community members agreed to join the Sullivans as coplaintiffs on the appeal by signing their names on a "sign-up sheet." None of these coplaintiffs entered into a retainer agreement with respondent and only the Sullivans agreed to pay her fees and expenses.

Respondent did file an appeal of the zoning board's determination and, purportedly on behalf of the Sullivans and the 20 coplaintiffs, she also filed a separate action seeking declaratory and injunctive relief to prevent further construction until certain permits were obtained. This separate action was dismissed by Judge Mottolese on June 30, 2000, based on the argument of the Town and the developer that the plaintiffs' action was barred by the doctrine of exhaustion of administrative remedies.

Shortly thereafter, the Sullivans advised respondent on multiple occasions by telephone, mail, fax and e-mail that they no longer wished to pursue litigation regarding the subdivision. These communications were explicit in their direction that respondent not file any further pleadings in the case and that her representation was being terminated. Notwithstanding these communications, on July 20, 2000, respondent moved for reargument of Judge Mottolese's June 30th decision, which motion was denied on August 16, 2000. Respondent apparently filed additional pleadings in the subdivision action in violation of the Sullivans' direction.

In September 2000, Judge Mottolese held a hearing to decide whether the defendants in the subdivision action (the Town and developer) were entitled to sanctions against respondent. During the course of this hearing, it was brought to the court's attention that several of the named coplaintiffs may not have authorized respondent to file the declaratory action. Thereafter, Judge Mottolese scheduled additional hearings and defined their scope as including the Sullivan's alleged termination of respondent's services. In addition, the court denied multiple motions by respondent to recuse himself on the ground of gender bias.

On July 17, 2001, Judge Mottolese issued a decision finding that respondent had engaged in professional misconduct by instituting the action for declaratory and injunctive relief on behalf of 22 plaintiffs without their authority, and by violating numerous rules of professional conduct. Among the violations found were, inter alia, failing to advise her clients of their status as plaintiffs (Connecticut Rules of Professional Conduct [RPC] 1.4), failing to abide by her clients' decision to withdraw (RPC 1.2 [a], [c]), unauthorized representation after her discharge (RPC 1.16 [a] [3]), misrepresentations to the court (RPC 3.3 [a] [1]), conflicts of interest (RPC 1.7, 1.8) and other improper conduct directed at the court (RPC 8.2, 8.4).

Subsequently, the court held a hearing on sanction and considered any aggravating and mitigating circumstances. In a November 2, 2001 order, Judge Mottolese determined that respondent should be disbarred due to her pattern of pervasive misconduct. The court relied on several factors, including her wilful behavior in ignoring her clients' instructions, her previous disciplinary history in state and federal court resulting in nine instances of reprimand or monetary sanction and her refusal to recognize the wrongfulness of her behavior.

Respondent appealed the disbarment order to the Connecticut Supreme Court. She argued that the lack of prior written notice deprived her of due process, that the court lacked the authorization to initiate disciplinary proceedings, that the court was biased against her and that the sanction of disbarment was an abuse of discretion. In a lengthy decision, the Supreme Court rejected all of respondent's arguments and upheld the disbarment order (see *Burton v Mottolese,* 267 Conn 1, 835 A2d 998 [2003], *cert denied* 541 US 1073 [2004]). The court specifically found that the oral and written notices provided by the court were adequate to permit respondent to prepare a defense and that the claims of bias were unfounded.

The Committee's motion seeking reciprocal discipline is now before us. New York's reciprocal discipline rule provides that upon a showing of the imposition of a disciplinary sanction in a foreign jurisdiction, the only defenses that may be raised by a respondent are: (1) a lack of notice constituting a deprivation of due process; (2) an infirmity of proof presented in the foreign jurisdiction; or (3) that the misconduct for which the attorney was disciplined in a foreign jurisdiction does not constitute professional misconduct in this state (22 NYCRR 603.3 [c]; *Matter of Meaden,* 263 AD2d 67 [1999]). Respondent has cross-moved to dismiss the petition or, alternatively, for a hearing.

Respondent's opposition papers establish none of these defenses. Instead, they are primarily focused on relitigating the Connecticut disciplinary proceedings. As to the first defense, respondent has not shown a lack of notice constituting a deprivation of due process (22 NYCRR 603.3 [c] [1]). As exhaustively detailed in the Connecticut proceedings, respondent received oral and written notice of the scope of the proceedings and of the potential rules violated. Further, she fully participated in the hearings held before Judge Mottolese. Although respondent claims that the court's bias undermines its assertions regarding the adequacy of the notice, the Supreme Court of Connecticut, presumably unaffected by Judge Mottolese's alleged bias, also found no due process violation. Thus, the defense of lack of notice is unavailable (22 NYCRR 603.3 [c] [1]).

Nor has respondent made any showing that the factual findings in the Connecticut disciplinary proceedings suffered from an infirmity of proof (22 NYCRR 603.3 [c] [2]). As outlined in the decisions of Judge Mottolese and the Connecticut Supreme Court, the evidence demonstrating respondent's continued pros-

ecution of the land use matter without her clients' permission was clear and unequivocal, and not subject to any interpretation or doubt. Further, since much of the misconduct was committed by respondent in the presence of Judge Mottolese, there is no real dispute regarding the reliability or credibility of the allegations against her.

Finally, since respondent does not raise the last defense, namely, that her Connecticut misconduct would not constitute misconduct in New York (22 NYCRR 603.3 [c] [3]), she has failed to establish any of the defenses available in a reciprocal discipline proceeding. Accordingly, the Committee's petition for reciprocal discipline should be granted and respondent's request for a hearing denied.

With respect to sanction, it is generally accepted that the state where the respondent resided and practiced law at the time the offenses were committed has the greater interest in the public policy considerations surrounding the discipline of lawyers engaged in misconduct (*see Matter of Paul*, 308 AD2d 23 [2003]). To that end, this Court has often deferred to the sanction imposed by the jurisdiction where the misconduct occurred. In this case, moreover, the sanction of disbarment imposed by the Connecticut disciplinary authorities is entirely consistent with the sanction frequently imposed in New York for attorneys who have engaged in a pattern of deceit and dishonesty (*see Matter of Lowell*, 14 AD3d 41 [2004], *appeal dismissed* 4 NY3d 846 [2005], *lv denied* 5 NY3d 708 [2005]). Because this respondent's deceit and dishonesty are well-documented in the record, disbarment is the appropriate sanction in this case.

Accordingly, the Committee's petition to impose reciprocal discipline on respondent pursuant to 22 NYCRR 603.3, based on the discipline ordered by the Supreme Court of Connecticut, should be granted, respondent disbarred and her cross motion to dismiss denied.

TOM, J.P., SAXE, NARDELLI, GONZALEZ and CATTERSON, JJ., concur.

Respondent's name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof. Cross motion for dismissal of proceeding or to set matter down for hearing denied.