Matter of Levy (2024 NY Slip Op 03866)

Matter of Levy

2024 NY Slip Op 03866

Decided on July 18, 2024

Appellate Division, First Department

PER CURIAM 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: July 18, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels,J.P.,
Barbara R. Kapnick
Lizbeth González
Martin Shulman
Kelly O'Neill Levy, JJ.

Motion No. 2024-01495 Case No. 2024-02045 

[*1]In the Matter of Douglas B. Levy, an Attorney and Counselor-at-Law: Attorney Grievance Committee for the First Judicial Department, Petitioner, Douglas B. Levy (Admitted as Douglas Benjamin Levy) (OCA Atty. Reg. No. 2235158), Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Douglas B. Levy, was admitted, as Douglas Benjamin Levy, to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on December 5, 1988.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Naomi F. Goldstein, of counsel), for petitioner.
Respondent pro se.

PER CURIAM 

Respondent Douglas B. Levy was admitted to the practice of law in the State of New York by the First Judicial Department on December 5, 1988, under the name Douglas Benjamin Levy.[FN1] Respondent was admitted to the practice of law in the State of Arizona on October 21, 1995. Although his current registered business address on file with the Office of Court Administration is in Tucson, Arizona, this Court retains continuing jurisdiction over respondent as the Judicial Department in which he was admitted to practice (Rules for Atty Disciplinary Matters [22 NYCRR] § 1240.7[a][2]).
This matter concerns the imposition of reciprocal discipline in this State due to the suspensions and censure imposed upon respondent in Arizona due to, among other transgressions, respondent's egregious violations of disciplinary and discovery procedures. Specifically, by notice dated March 21, 2024, the Attorney Grievance Committee (AGC) moves, under Judiciary Law § 90(2) and 22 NYCRR 1240.13, to discipline respondent predicated on the discipline imposed on him in Arizona, and to order him to show cause why discipline should not be imposed for the underlying misconduct, or, in the alternative, to sanction respondent as this Court deems just and proper. Respondent has filed an opposition to the AGC's motion, to which the AGC, as of the return date, has not replied.
As a preliminary observation, we note that respondent, as a matter of course throughout the several cases and proceedings at issue, employed highly inflammatory, petty, and unprofessional language in a series of scathing ad hominem attacks on opposing counsel, parties, and the courts. For the sake of brevity, and because the suspensions at issue primarily stem from respondent's failure to obey mandates of the court and discovery rules, we choose to omit the myriad of damning quotes found in respondent's filings except for those that are integral to the disciplinary rulings at issue.
I. Respondent's 2007 Suspension — 30 Days
Respondent's first suspension came on October 30, 2007, when the Supreme Court of Arizona suspended respondent from the practice of law for 30 days and ordered that he participate in the State Bar of Arizona's Ethics Enhancement Program (EEP). This suspension primarily resulted from respondent's behavior during a case in Pima County, Arizona Superior Court, Pitts v Levy, No. C-20042915, where he was sued by two former employees [*2]for unpaid wages and vacation time. In entering an order granting the plaintiffs summary judgment dismissing respondent's counterclaim for wrongful institution and civil proceedings, Judge Carmine Cornelio sanctioned respondent $500.00, payable to the plaintiffs, for respondent's ad hominem attacks in his opposition papers.[FN2] Plaintiff did not make the required sanctions payment by the deadline. In an order dated September 22, 2004, Judge Cornelio denied respondent's motion to reconsider the sanctions order and directed respondent to self-report to the State Bar of Arizona and file an affidavit of compliance, to be followed by an affidavit setting forth the outcome of his self-report.
In October 2004, the plaintiffs applied for an order to show cause regarding respondent's failure to pay the sanction. In response, respondent filed a "Statement of Non-Compliance" stating that he would "never self-report," and never filed the self-report of affidavits of compliance required by Judge Cornelio's September 2004 order. By order dated October 25, 2004, on motion, Judge Cornelio found respondent in contempt and imposed an additional $200.00 sanction payable to plaintiffs.[FN3] Judge Cornelio reported respondent to the State Bar of Arizona by letter dated the same day.
In a report dated January 12, 2007, a hearing officer of the Supreme Court of Arizona determined, as relevant here, that respondent's failure to self-report to the State Bar of Arizona and to file affidavits of compliance violated Arizona Rules of Professional Conduct rule 3.4(c) (a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists"), and Rules of the Supreme Court of Arizona former rule 53(c)(current rule
54[c]) (grounds for discipline includes knowing violation of any rule or court order), and former rule 41(c) (current rule 41[b][3]) (attorneys' duties and obligations include "maintain[ing] the respect due to courts of justice and judicial officers"). As to sanction, the hearing officer recommended that respondent be suspended for 30 days and ordered to participate in the EEP.
In a report dated June 5, 2007, the Disciplinary Commission of the Supreme Court of Arizona adopted the hearing officer's findings of fact and conclusions of law as to respondent's violations of rule 3.4(c) and former rules 53(c) and 41(c), disaffirmed a finding by the hearing officer's that former rule 41(g) of the Rules of the Supreme Court of Arizona (attorneys' duties and obligations include "avoid[ing] engaging in unprofessional conduct and to advance no fact prejudicial to the honor or reputation of a party or a witness unless required by the justice of the cause with which the [attorney] is charged") was unconstitutionally vague and determined that respondent had violated that rule, and adopted the hearing officer's recommended sanction of a 30-day suspension and participation in the EEP.
By order and [*3]judgment entered October 30, 2007, the Supreme Court of Arizona suspended respondent from the practice of law for 30 days and ordered that he participate in the EEP. Respondent was reinstated to the practice of law in Arizona by order entered January 17, 2008.
II. Respondent's 2022 Suspension — Six Months and One Day Respondent's second suspension was imposed on October 26, 2022, when the Supreme Court of Arizona ordered, among other things, that respondent be suspended from the practice of law for six months and one day, to be followed by two years' probation. During the course of respondent's representation of the plaintiff in Esala v Orangutan Home Services, CV2016-2780, respondent altered the language used by opposing counsel in a request for admissions when producing the text of the request and did not call attention to having done so, changing the word "accident" to "violent rear-end collision." When was asked later about why he made such changes, he said, "I just felt it was appropriate to change the word 'accident' to 'collision.'" Beyond that I have nothing to say on this matter." The trial court granted sanctions against respondent for counsel fees and costs associated with having to undo the alterations. In the ensuing disciplinary proceedings, respondent displayed a recalcitrant attitude and denied any misconduct:
"This is another silly avenue of inquiry. I did not alter defense counsel's language in any discovery requests. In order to alter language one must change the meaning of the language . . . I corrected the language of defense counsel's discovery requests to make them conform with the evidence. That is what great lawyers do."
A hearing panel found that this violated not only the applicable Arizona Rules of Civil Procedure and the Lawyer's Creed of Professionalism, but also Arizona Rules of Professional Conduct rules 3.4(c) and 4.4(a)(prohibiting a lawyer from using "means that have no substantial purpose other than to embarrass, delay, or burden any other person"). The Supreme Court of Arizona affirmed those findings.
Respondent also behaved in an egregiously discourteous manner to opposing counsel throughout the underlying case and disciplinary proceedings. Examples include, but are not limited to, respondent's email response to opposing counsel's last-minute request to adjourn a settlement conference so she could attend her child's school play, in which respondent referred to opposing counsel's "level of incompetence (selfishness?)," describing this as "not just a 'mom fail'" but "yet another 'lawyer fail.'" Opposing counsel eventually made, and the court granted, a motion for sanctions against respondent, awarded the defendants specified fees and costs, and stated that it would refer respondent to the State Bar of Arizona. The matter ultimately settled, and the parties agreed that the sanctions awarded against respondent would be waived.
Respondent's misconduct continued into the ensuing disciplinary proceedings. After [*4]the court filed its bar charge against respondent, as promised in its order granting the defendants' motion for sanctions, respondent filed a 76-page response, which included among other things a request for the judge to be formally investigated for the "unprepared and thoughtless way he 'presided' over" the underlying proceedings, respondent's labeling of opposing staff as "liars," and a boast that "[respondent] did not require an unfair advantage to easily defeat an incompetent lawyer like [opposing counsel] at this trial." Respondent further lambasted the judge and opposing counsel in emails with the State Bar of Arizona. He also made rude, unprofessional, and demeaning comments about the State Bar of Arizona's attorney during the disciplinary proceedings, repeatedly calling him a liar and characterizing his work product as "substandard."
At first, after an evidentiary hearing, a hearing panel reprimanded respondent and placed him on probation for two years. However, the Supreme Court of Arizona vacated the decision and remanded for further proceedings. After another hearing, a panel concluded that respondent violated former rule 41(g) (current rule 41[b][7]) of the Rules of the Supreme Court of Arizona, and rules 4.4(a) and 8.4(d) (a lawyer shall not "engage in conduct that is prejudicial to the administration of justice"). In an order entered September 1, 2021, the hearing panel imposed a 90-day suspension.
The Arizona Supreme Court affirmed the hearing panel's findings of fact and conclusion of law but determined that a 90-day suspension was inadequate. In an order entered October 26, 2022, the Supreme Court of Arizona ordered, among other things, that respondent be suspended from the practice of law for six months and one day, to be followed by two years' probation. According to publicly accessible online records from the State Bar of Arizona, respondent remains suspended pursuant to this order and has not been reinstated.
III. Respondent's 2023 Misconduct and Reprimand
Client, a retired attorney, and his wife retained respondent in the summer or fall of 2022 (before the Supreme Court's October 26, 2022 suspension order) to represent him in a personal injury case involving injuries sustained at an Airbnb. Respondent did not tell Client about his suspension; rather, Client learned about it on December 8, 2022, from the attorney who had referred Client to respondent. Respondent continued to work on Client's case between the date of his suspension and the date on which Client found out about respondent's suspension.
On December 9, 2022, Client emailed respondent stating he had learned of respondent's suspension and believed respondent tried to hide it. On December 10, 2022, respondent sent Client a five-page email in which he said that he had not informed Client about his suspension because he "simply did not have the time" he had nine other cases with impending deadlines; it would have been "very time-consuming to notify so many clients [*5]and then get the new lawyers up to speed," and denied any dishonesty on his part regarding the disciplinary matter. Nevertheless, he promised to arrange for Client to meet with new attorneys to take over the case.
In an order dated August 30, 2023, the presiding disciplinary judge accepted respondent's agreement with the State Bar of Arizona for discipline by consent and reprimanded respondent for his failure to comply with the obligations required of him upon being suspended, including notifying his clients of his suspension.
The ACG's Motion for Reciprocal Discipline
Respondent never reported the discipline to the AGC; the AGC was unaware of any such discipline until the State Bar of Arizona sent it a copy of the August 30, 2023, order and judgment reprimanding respondent. The AGC now moves to impose reciprocal discipline based on respondent's misconduct in Arizona. Respondent's conduct, if committed in New York, would have violated Rules of Professional Conduct (22 NYCRR 1200.0) rule 3.3(f)(2) (in appearing before a tribunal, a lawyer shall not "engage in undignified or discourteous conduct") and rule 8.4(h) (a lawyer shall not "engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer"). Further, it asserts that departure from the sanctions imposed in Arizona is warranted given that this matter involves three separate impositions of discipline, none of which the AGC was ever informed about, and recommends that respondent be suspended for no less than one year. AGC also argues that the only defenses available to respondent in this reciprocal discipline proceeding — deprivation of due process, infirmity of proof, or that the misconduct without the state would not be misconduct within the state (see 22 NYCRR 1243.13 [b]) — are unavailable here.
In opposition, respondent submits a 48-page affirmation, responding line-by-line to the AGC's affirmation in support of its motion, together with more than 1,000 pages of exhibits. He denies violating 22 NYCRR 1240.13(d), requiring him to self-report his out-of-state discipline, because, among other things, he believed that the State Bar of Arizona would notify its counterpart in New York. Respondent also asserts that he has "been punished unfairly [in Arizona] and more than enough." He states, "It is hard for me to fathom how a lawyer of my abilities and success and selfless community devotion has been treated so horribly."
Discussion Respondent requests oral argument of the AGC's motion. This motion is denied as oral argument is not permitted on motions before this Court (Rules of App Div, All Depts [22 NYCRR] § 1250.4[a][8]). On the issue of entitlement to reciprocal discipline, none of potentially applicable defenses are available to respondent in this case.
First, as to due process, nothing in the record suggests that the Arizona disciplinary proceedings deviated from the way Arizona law prescribes that they be conducted. Respondent was given notice of the charges [*6]against him and ample opportunity to respond; a hearing at which he was allowed to cross-examine the State Bar's witnesses and evidence, and to submit testimony and evidence in his defense; and the opportunity to make written submissions to both the disciplinary authorities and the Supreme Court of Arizona. Respondent's due process rights were not violated simply because the Supreme Court of Arizona declined to hear oral argument at the end of respondent's second disciplinary proceeding.
Second, as to infirmity of proof, the charges against respondent were amply supported by testimonial and documentary evidence, including his emails with opposing counsel, opposing counsel's testimony, and respondent's motion papers and court filings.
Third, as to the out-of-state misconduct being misconduct in New York, the AGC is correct that respondent's misconduct, if committed in New York, would have violated Rules of Professional Conduct (22 NYCRR 1200.0) rule 3.3(f)(2) (in appearing before a tribunal, a lawyer shall not "engage in undignified or discourteous conduct") and rule 8.4(h).
As to sanction, the grand total of disciplinary sanctions imposed by the Supreme Court of Arizona amounts to a six month-and-one-day suspension plus a 30-day suspension, for a total of seven months, plus a reprimand, for which the New York equivalent would be a public censure. As noted by the AGC, this Court generally "gives significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought" (Matter of Kort, 224 AD3d 15, 20 [1st Dept 2024] [internal quotation marks omitted]; see Matter of Peters, 127 AD3d 103, 109 [1st Dept 2015]). This Court "depart[s] from this general rule only in rare instances" (Kort, 224 AD3d at 20 [internal quotation marks omitted]). Moreover, this Court has noted that as a general rule in reciprocal disciplinary matters, it "accepts that the jurisdiction where respondent lived and practiced law at the time of the offense has the greatest interest in the issue and the public policy considerations relevant to such disciplinary actions" (Matter of Sondel, 111 AD3d 168, 178 [1st Dept 2013]; see Matter of Lowell, 14 AD3d 41, 48 [1st Dept 2004][same]).
Certainly, respondent's behavior has been atrocious over a long period, and does not present an isolated incident. Nonetheless, this case does not present one of the "rare instances" in which this Court should increase the sanction imposed by the foreign jurisdiction. As AGC notes, respondent was the subject of multiple sanction orders in Arizona. However, the Arizona Supreme Court was aware of respondent's prior disciplinary history when it imposed the suspension of six months and one day in the Esala matter, and that was overriding a hearing panel's determination to impose a 90-day suspension. Likewise, although Arizona was aware of respondent's disciplinary history when it considered Client's complaint, it chose to impose a reprimand, rather than another suspension[*7]. While this Court should not countenance respondent's behavior, as noted above, New York does not have a greater interest in disciplining respondent for unprofessional behavior toward other members of the bar in Arizona than Arizona does (see Matter of Sondel, 111 AD3d at 178; Matter of Lowell, 14 AD3d at 48).
To be sure, respondent behaved in a contemptuous, belittling, and demeaning manner to a judge and to opposing counsel. But regardless of the appalling nature of respondent's behavior, this case does not involve misconduct involving client funds or property (cf. Matter of Dancy, - AD3d - , 2024 NY Slip Op 02870 [1st Dept 2024] [attorney censured in Tennessee for negligently mishandling foreclosure, resulting in client losing ownership of her home, and then asking for fee to fix his own mistake, ultimately telling her that she could simply try to lease her home from its new owner; AGC requested censure but this Court found that AGC and attorney "failed to fully acknowledge the gravity of [attorney's] misconduct" and imposed three-month suspension]). There is no allegation that any client was tangibly harmed, not even Client. Rather, the greatest portion of the charges implicate issues of discourtesy and disrespect (albeit undertaken over many years). Although respondent briefly practiced law while suspended, Arizona imposed a reprimand for that conduct.
Similar conduct has resulted in penalties of censure (Matter of Freifeld, 210 AD3d 39, 41-42 [1st Dept 2022] [in letters to court, attorney stated that a special referee "plays dirty pool," conducted herself with "hubris" and was "corrupt and a liar" and "fixe[d] matrimonial actions" including the attorney's own divorce; public censure imposed after attorney apologized]). Other cases presenting more troubling conduct have resulted in three months of suspension (Matter of Denenberg, 192 AD3d 76 [1st Dept 2020] [attorney called an adversary a "bitch" in front of her clients and colleagues and falsely stated that the adversary had slapped him but later admitted that the allegation was false; attorney, who had previously been admonished for similar conduct, never apologized or showed remorse]; Matter of Dinhofer, 257 AD2d 326 [1st Dept 1999] [in reciprocal discipline case, this Court imposed a three-month suspension where attorney had been publicly censured by the Southern District of New York for calling federal judge "corrupt" and telling her "you stink" during a telephone status conference]).
As the AGC notes, Matter of Steinberg (167 AD3d 206 [1st Dept 2018], appeal dismissed 33 NY3d 1043 [2019]) resulted in a one-year suspension for an attorney with no prior disciplinary history and who presented no mitigation, engaged in discourteous conduct before a New York tribunal, did not apologize, did not pay a sanction imposed for frivolous litigation, and sent an ex parte communication to a New York Supreme Court judge in a different civil matter. This behavior hews closely to respondent's in this [*8]case, and is arguably not even as egregious because it happened over a shorter period. However, the seven-month suspension is nonetheless appropriate here because Arizona's imposed penalty of seven months is not at "great variance" with the one-year suspension in Steinberg (Matter of Sirkin, 88 AD3d 165, 169 [1st Dept 2011]), nor is it "strikingly inconsistent" with the discipline generally imposed by New York for the same misconduct (Matter of Dranov, 14 AD3d 156, 163 [1st Dept 2004]).
As the AGC also points out, respondent failed to report any of his discipline to this Court or the AGC, thus violating 22 NYCRR 1240.13(d). In this regard, respondent's conduct is an aggravating factor further supporting the seven-month suspension.
Accordingly, AGC's motion for reciprocal discipline should be granted, and respondent is suspended from the practice of law in New York for a period of seven months, effective immediately, and until further order of this Court.
All concur.
Wherefore, it is Ordered that the Attorney Grievance Committee's motion for reciprocal discipline pursuant to Judiciary Law §90(2) and 22 NYCRR 1240.13, predicated upon similar discipline imposed by the Supreme Court of Arizona, is granted, and respondent Douglas B. Levy, admitted as Douglas Benjamin Levy, is suspended from the practice of law in the State of New York for a period of seven months, effective the date hereof, and until further order of this Court; and
It is further Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, respondent Douglas B. Levy, admitted as Douglas Benjamin Levy, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and
It is further Ordered that respondent Douglas B. Levy, admitted as Douglas Benjamin Levy, is directed to fully comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), which are made a part hereof; and
It is further Ordered that if respondent Douglas B. Levy, admitted as Douglas Benjamin Levy, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith.
Entered: July 18, 2024

Footnotes

Footnote 1: Respondent appears pro se in this matter.

Footnote 2: For example, respondent labeled the action as "patently frivolous" and wrote that the court "will quickly realize that this is absolutely the dumbest lawsuit pending in Pima County Superior Court" and that "the sole purpose of the . . . motion is an unprofessional attempt at embarrassing" respondent. Respondent employed similar language, labeling opposition's papers as "absolutely, positively pathetic," in a Pima County Superior Court personal injury case where he represented the plaintiffs, Rollin v Zimmerman, No. C-2035412, which appears to have partly formed the basis for respondent's 2007 disciplinary determination.

Footnote 3: Respondent ultimately paid the $700.00 in sanctions, and the underlying case was resolved at arbitration.