[787 NYS2d 271]

In the Matter of ALEXANDER B. DRANOV, ESQ., an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 28, 2004

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Mady J. Edelstein* of counsel), for petitioner.

*Alexander B. Dranov*, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

Respondent Alexander B. Dranov was admitted to the practice of law in the State of New York by the First Judicial Department on November 3, 1986, and at all times relevant to this proceeding, maintained an office for the practice of law within the First Judicial Department. He was admitted to the bar in the State of Pennsylvania in 1984 and the State of New Jersey in 1986, where he also maintains a law office.

The Departmental Disciplinary Committee now seeks an order, pursuant to 22 NYCRR 603.3, suspending respondent for six months predicated upon similar discipline issued by the Supreme Court of New Jersey. In the alternative, the Committee seeks an order sanctioning respondent as this Court deems appropriate.

On or about September 27, 2002, the New Jersey Office of Attorney Ethics filed a complaint against respondent alleging several violations of the New Jersey Rules of Professional Conduct (RPC). The first count of the complaint alleged that respondent charged a client an unreasonable fee in a personal injury matter in violation of RPC 1.5 (a); the second count alleged that respondent created a conflict of interest situation by representing a second client against a former client in violation of RPC 1.9 (a); and the third count alleged that respondent, through his paralegal,[1] solicited professional employment from the first client at a time when she could not have exercised reasonable judgment.[2]

As to count one, the charges in the complaint stem from claims that respondent represented both the driver (client/driver) and the passenger (client/passenger) of the same car which was involved in an accident caused by another driver's negligence. On July 22, 1997, the client/driver retained respondent, a solo general practitioner, to prosecute a personal injury and property damage claim. The retainer agreement called for respondent to receive 33⅓% of the sum recovered less expenses, but if the client replaced him as counsel, she would be required to reimburse him the reasonable value of his services

---

1. At all times relevant to this proceeding, respondent's paralegal was Bella Dashevskaya, now his wife.

2. This count was ultimately dismissed.

performed before his replacement at the rate of $200 per hour. The client/driver replaced respondent with new counsel in August 1997, and, around this time, the other driver's insurance carrier sent respondent a settlement check for $2,134.92 for property damage. Although the check was made out to the client/driver and respondent jointly, respondent alone endorsed the check without his client's authorization. In October 1997, respondent sent the client/driver a bill for services in the amount of $2,246, $111.08 more than the settlement he had obtained. Respondent did not send the client/driver any of the settlement funds until six years later.

As to count two, the charges in the complaint relate to claims that respondent wrote to the other driver's insurer on behalf of *both* the client/driver and her passenger. In addition, after the client/driver discharged respondent, he contacted the client/driver's carrier and demanded $60,000 for the client/passenger's bodily injuries. That demand exceeded the client/driver's individual limit by $35,000. Although another law firm filed the client/passenger's lawsuit against the client/driver, respondent received a $7,000 fee.

Respondent answered the complaint, and, thereafter, in March and April 2003, three days of hearings were held before a Hearing Panel of the District Ethics Committee (DEC).[3] At the conclusion of the hearing, the DEC found, as to the first count, that respondent charged excessive fees in violation of RPC 1.5 (a); that the retainer agreement was insufficient in violation of RPC 1.5 (c); that respondent failed to obtain his client's endorsement on a settlement check and failed to promptly deliver to his client her share of the damage award in violation of RPC 1.15 (b); that respondent had transferred his client's settlement check to his business account before an accounting and severance of their interests in violation of RPC 1.15 (c); and that respondent manufactured an invoice after the fact and falsely represented to his client that he would retain the check in escrow until he received payment for services rendered in violation of RPC 8.4 (c).

As to count two, the DEC found that respondent created "an impermissible conflict of interest" when he chose to represent a second client against the direct interest of a former client and misled the DEC as to his knowledge about the other firm's

---

**3.** Respondent was represented by counsel except for the last day of hearing.

activities in its suit against the client/driver, in violation of RPC 1.9 and RPC 8.1 (a).

Based on respondent's lack of knowledge of both the law and the Rules of Professional Conduct, the DEC recommended a two-year suspension and that respondent be required to complete, prior to reinstatement, certain legal education courses.

Thereafter, the Disciplinary Review Board (the Board) conducted a de novo review of the record. By report dated February 3, 2004, the Board agreed with many of the Hearing Panel's findings, but recommended that respondent only receive a six-month suspension.

With regard to count one, the Board determined that respondent engaged in dishonest conduct in violation of RPC 8.4 (c) by charging the client/driver an excessive fee in an attempt to justify his retention of the entire settlement award in violation of RPC 1.5 (a). Specifically, the Board found:

> "What was unreasonable—unconscionable even— was the charge of $200 an hour for Dashevskaya's services, especially when the retainer agreement provided for the payment of the reasonable value of respondent's services. Particularly outrageous was respondent's eleventh-hour explanation, contrived in the course of the DEC hearing, that $200 represented a 'melded' or 'blended' rate for his and Dashevskaya's services."

The Board also found that respondent engaged in misconduct by failing to provide the client/driver with a copy of the retainer agreement in violation of RPC 1.5 (b) and by failing to obtain her endorsement on the settlement check in violation of New Jersey Advisory Committee on Professional Ethics Opinion 635. Furthermore, despite his representation to the client/driver that he would hold the disputed settlement funds in escrow, he transferred them to his business account and retained the funds as fees in violation of RPC 1.15 (b) and (c).[4]

As to count two, the Board found that "[respondent embroiled himself in several conflict-of-interest situations, thereby compromising the interests of one client to the advantage of the

---

**4.** Although respondent was not specifically charged with violating RPC 1.5 (b), RPC 1.15 (b) and (c), and RPC 8.4 (c), the Board observed that these issues were fully explored before the DEC Panel. Consequently, the Board amended the complaint to conform with the proof (see *Matter of Logan*, 70 NJ 222, 232, 358 A2d 787 [1976]).

other and breaching his duty of fidelity to both." Consequently, the Board concluded that "[b]y asserting the claim of one client against a former client, without obtaining the former client's consent after full disclosure of the circumstances and consultation with the former client, respondent violated RPC 1.9 (a)." Furthermore, respondent received a $7,000 fee relative to the client/passenger's claim even though another firm ultimately filed the client/passenger's law suit against the client/driver. While respondent claimed he had only learned about the lawsuit in 1999, the Board found that by allowing the client/passenger's suit against the client/driver to proceed, respondent committed another violation of RPC 1.9 (a) and Ethics Opinion 188.[5]

In determining the appropriate sanction, the Board found that although respondent "committed serious ethics offenses" by representing both the driver and the passenger, the conflict of interest "was confined to one client and did not cause her serious economic injury." The Board also found that respondent's explanations were not credible; that he displayed an astonishing lack of familiarity with the rules of law and procedure, as well as the Rules of Professional Conduct; and that his refusal to acknowledge wrongdoing in many areas was troubling. Despite the myriad of aggravating factors and lack of mitigating ones, the Board nevertheless did not agree with the DEC's recommendation of a two-year suspension and instead recommended only a six-month suspension. In addition, the Board recommended that prior to reinstatement respondent submit proof of completion of certain Continuing Legal Education and New Jersey professional responsibility courses.

Subsequently, the Board's decision was submitted to the New Jersey Supreme Court. Respondent filed a petition for review contesting the amendments to the complaint, over respondent's objections, to conform to the evidence; the failure to consider mitigating factors; and the recommendation of a penalty inconsistent with the discipline of other attorneys. The New Jersey Supreme Court denied his petition for review, and by order entered April 26, 2004 (179 NJ 420, 846 A2d 594 [2004]), adopted the Board's report in its entirety. The New Jersey Supreme Court suspended respondent for six months, effective May 22, 2004, and directed him to enroll in the next-offered session of the Institute for Continuing Legal Education's Skills and Methods courses and to submit proof of his completion of

---

5. The Board also amended the complaint to conform to the evidence by finding a violation of Ethics Opinion 188.

said courses in addition to 10 hours of courses in New Jersey professional responsibility.

The Departmental Disciplinary Committee now seeks to suspend respondent for six months based upon the doctrine of reciprocal discipline. The Committee maintains that respondent is precluded from raising any defense enumerated in 22 NYCRR 603.3 (c).[6] The Committee argues that respondent, represented by counsel from the inception until the final hearing date, fully participated in the disciplinary proceedings by answering the charges, attending the hearing, calling a witness, testifying on his own behalf, submitting documentary evidence, filing two posthearing affidavits to the DEC, submitting a brief to the Board, and filing a petition for review before the Supreme Court. Furthermore, the Committee asserts that the record contains ample proof to support the findings of professional misconduct.

Respondent, pro se, protests the imposition of reciprocal discipline and raises lack of procedural due process and infirmity of proof defenses in the New Jersey proceeding. In the alternative, respondent requests that the sanction be reduced or be made retroactive to August 16, 2004, the date he voluntarily ceased practicing law in New York.

Specifically, respondent contends that the New Jersey authorities improperly permitted the addition of four charges with respect to count one by amending the complaint to conform to the proofs, to wit, failure to provide a client with the basis of his fee in writing (RPC 1.5 [b]), failure to deliver funds (RPC 1.15 [b]), failure to maintain contested funds separate and intact (RPC 1.15 [c]), and failure to obtain a client's endorsement on the settlement check (Ethics Opinion 635).[7] Respondent contends that these amendments were made without proper notice and

---

**6.** 22 NYCRR 603.3 (c) provides that the only defenses that may be raised in a reciprocal disciplinary proceeding are:

"(1) that the procedure in the foreign jurisdiction was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

"(2) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this court could not, consistent with its duties, accept as final the finding in the foreign jurisdiction as to the attorney's misconduct; or

"(3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this jurisdiction."

**7.** There is no indication that the Board conformed the pleadings to the proof with respect to Ethics Opinion 635.

would have been improper under New York law,[8] that he was deprived of a fair opportunity to defend himself in advance of his testimony, and that the Board's recommended sanction was based, in large part, on these additional charges.

However, the first count of the complaint did, in fact, allege the facts which gave rise to the additional violations the Board cited since it stated that the client/driver was not given a copy of the retainer agreement, that she was unaware that a check had been issued and cashed by respondent, and that respondent transferred the funds from his trust account to his business account. Furthermore, the Board only amended the complaint to add disciplinary rule violations after they were fully litigated. For example, respondent and the client/driver testified about whether or not she was provided a copy of the retainer agreement, and respondent testified that the client/driver's endorsement was not required before he deposited the settlement check. Moreover, respondent admits that he objected to the addition of these charges at the DEC hearing, in his brief to the Board, and in his petition for review before the Supreme Court, all to no avail. In any event, even if the additional allegations were set aside, respondent nonetheless was found to have violated two counts of professional misconduct based upon an impermissible conflict, improper fee, and mishandling of settlement funds.

Nor is there merit to respondent's complaint that he was denied the opportunity to fully present his defense at the DEC hearing because three witnesses he wished to call were not allowed to testify. The record supports the DEC's determination denying respondent's belated request because the proposed witnesses had no relevant testimony to offer. Furthermore, respondent took the opportunity to raise his fair hearing claim before the Board and the Supreme Court, which was rejected. Accordingly, respondent fails to state a valid defense pursuant to 22 NYCRR 603.3 (c) (1).

Respondent next argues that there was an infirmity of proof in the New Jersey proceeding regarding the excessive fee charge and the improper maintenance of disputed fees. However, the fee agreement itself and the bank records show the withdrawal of the escrow funds (to which respondent stipulated at the hearing). Moreover, respondent appears to admit that he charged an

---

**8.** New York Court rules permit amendment or supplementation of charges by stipulation or by the referee in the course of a hearing, provided that reasonable notice and an opportunity to be heard is afforded (22 NYCRR 605.11 [f]).

excessive fee but argues that the disciplinary authorities were incorrect as to amount. Respondent's claim that there was inadequate proof regarding his conflict of interest is without merit. The attorney hired to prosecute the client/passenger's action testified that respondent was aware the client/driver had been named as a defendant in the client/passenger's lawsuit, and respondent's own correspondence confirms this. Finally, respondent's unsupported assertion that the DEC Panel "felt that I had 'waived' my right to state my case" is contradicted by the hearing transcript which reflects that respondent testified on his own behalf, recalled the client/driver, and called his wife to the stand.

Finally, the Committee asserts that respondent has no defense under 22 NYCRR 603.3 (c) (3) because the misconduct for which he was disciplined in New Jersey constitutes misconduct in New York. Indeed, respondent does not raise this defense and the New Jersey RPC and the New York Code of Professional Responsibility Disciplinary Rules regarding respondent's professional misconduct are similar (*see* DR 2-106 [a] [22 NYCRR 1200.11]; *Matter of Cipolla,* 233 AD2d 58 [1997]; DR 5-108 [22 NYCRR 1200.27]; *Matter of Anschell,* 11 AD3d 56 [2004]; DR 9-102 [b] [4]; [c] [4] [22 NYCRR 1200.46]; *Matter of Levy,* 307 AD2d 47 [2003]). Accordingly, respondent has failed to state a valid defense.

The findings of misconduct are supported by the record and are accepted by this Court. With regard to the sanction, the Board determined that a six-month sanction was appropriate given respondent's questionable candor, lack of contrition, and "astonishing lack of familiarity with the rules of law and procedure." We recognize the generally accepted and well-reasoned principle that the jurisdiction where a respondent lives and actively practices law at the time of the offense has the greatest interest in the issue and the public policy considerations relevant to such disciplinary actions (*see Matter of Yagman,* 263 AD2d 151 [1999]; *Matter of Reiss,* 119 AD2d 1 [1986]), and great weight should be accorded to the sanction imposed by the state where the charges were originally brought (*see Matter of Greenfield,* 211 AD2d 29 [1995]).

The six-month suspension imposed by New Jersey is not strikingly inconsistent with our own precedent for similar levels of misconduct (*see e.g. Matter of Yagman, supra* [one-year suspension where attorney failed to promptly pay funds to client; failed to render appropriate accounting, commingled and misappropri-

ated funds, entered into an illegal fee agreement and collected an unconscionable fee]; *Matter of Kraus*, 253 App Div 641 [1938] [one-year suspension where attorney failed to return money under a retainer agreement and endorsed name of client on checks for small amounts without authority]; *cf. Matter of Yamada*, 197 AD2d 235 [1994], *lv denied* 83 NY2d 761 [1994] [three-year suspension appropriate where attorney assisted client in hiding assets from the IRS and in criminal evasion of federal income taxes and improperly represented clients with conflicting interests without necessary disclosure or consents]; *Matter of Gold*, 240 AD2d 74 [1998] [public censure appropriate where attorney represented both borrower and lender with no resulting economic harm]).

Accordingly, the petition for an order pursuant to the doctrine of reciprocal discipline should be granted (*see* 22 NYCRR 603.3), and respondent should be suspended from the practice of law in the State of New York for a period of six months, effective from the date of this order[9] and until further order of this Court.

TOM, J.P., LERNER, FRIEDMAN, MARLOW and GONZALEZ, JJ., concur.

Respondent suspended from the practice of law for a period of six months, effective the date hereof, and until further order of this Court.

---

**9.** We have concluded that respondent's conduct was sufficiently serious to warrant a rejection of his request that his six-month suspension be retroactive to any extent.