[895 NYS2d 338]

In the Matter of WILLIAM N. STAHL (Admitted as WILLIAM NORTON STAHL), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 16, 2010

## APPEARANCES OF COUNSEL

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Angela Christmas* of counsel), for petitioner.

*William N. Stahl,* respondent pro se.

## OPINION OF THE COURT

Per Curiam.

Respondent William N. Stahl was admitted to the practice of law in the State of New York by the Second Judicial Department on March 28, 1979 under the name William Norton Stahl. At all times relevant to this petition, respondent maintained an office for the practice of law in New Jersey, where he was admitted to practice law in 1983.

In this reciprocal discipline proceeding, the Departmental Disciplinary Committee (Committee) seeks an order pursuant to 22 NYCRR 603.3 imposing reciprocal discipline upon respondent, suspending him from the practice of law for a period of no less than one year based upon a one year suspension imposed on him by the Supreme Court of New Jersey (198 NJ 507, 969 A2d 1067 [2009]), or in the alternative, for such sanction as this Court deems appropriate. By a cross motion, respondent requests an order dismissing the petition or, in the alternative, for a hearing.

The present disciplinary charges stem from respondent's conduct while performing per diem work for another attorney who filed a disciplinary complaint against respondent with the Supreme Court of New Jersey, District Ethics Committee (DEC). In November 2005, DEC served a formal complaint on respondent who thereafter filed a verified answer.

In November 2006, a Hearing Panel of DEC convened to hear testimony on the complaint. Respondent appeared with counsel and testified on his own behalf. By a report dated May 6, 2006, DEC found that respondent violated various New Jersey Rules of Professional Conduct (RPC) and recommended an indeterminate suspension.[1]

---

1. The RPC violations were as follows: (1) failing to promptly notify a third person of the receipt of funds in which the third person has an interest (RPC rule 1.15 [b]); (2) failing to promptly deliver such funds to the third person (RPC rule 1.15 [b]); (3) knowingly making a false statement of material fact or law to a tribunal (RPC rule 3.3 [a] [1]); (4) knowingly offering evidence that the lawyer knows to be false (RPC rule 3.3 [a] [4]); and (5) engag-

New Jersey's Disciplinary Review Board (Review Board) thereafter convened a hearing in October 2008, to review de novo the findings of DEC and to hear oral argument. Two weeks before oral argument, respondent attempted to offer into evidence a certification of a witness who wished to testify on respondent's behalf. The Review Board declined to consider this certification because the prior proceedings had been concluded, the record was closed for testimony purposes, and because the presenter did not have an opportunity to cross examine the witness.[2]

By a report dated December 4, 2008, the Review Board agreed with most of the Hearing Panel's factual findings and the recommended sanction of a one year suspension. The Review Board found that the underlying misconduct occurred in the context of respondent's performance of legal services 12 years earlier, on a per diem basis, for Linda Strumpf, an attorney with a heavy debt-collection practice. The case that led to Strumpf's grievance against respondent involved a client by the name of KBI Security Services, Inc. (KBI). Strumpf had provided prior legal services to KBI. Robert King was the president of the company, while his son, Stuart King, was in charge of KBI's New Jersey operation. KBI hired Strumpf to file a New Jersey suit against J. Sepenuk & Sons, Inc. (Sepenuk), who owed KBI $12,132.84. Although Sepenuk filed an answer and counterclaim, no one appeared on its behalf at the trial, which she personally handled. As a result, Strumpf obtained a default judgment against Sepenuk and later levied on its bank account. Subsequently, Sepenuk filed a motion to vacate the default.

In February 1996, Strumpf retained respondent to prepare opposition to the motion to vacate and to appear on its return date. The court vacated the default judgment and set a trial date for March 1996. Strumpf continued to retain respondent's services for KBI's representation at the trial. His compensation arrangement remained unchanged, $200 for each day of trial. At the end of a four-day jury trial, respondent obtained a favorable verdict for the entire amount sought in KBI's complaint, plus interest and attorney's fees.

In April 1996, respondent visited Strumpf's office to prepare Strumpf's counsel fee's affidavit. Then, in early June 1996, re-

---

ing in conduct involving dishonesty, fraud, deceit or misrepresentation (RPC rule 8.4 [c]).

**2.** Reportedly, the purported witness, Stuart King, who, at the time of the DEC hearing was out-of-state, had refused to testify at the DEC hearing.

spondent prepared a motion, supported by a memorandum of law, for the entry of the final order and judgment. Both documents identified Strumpf and respondent as attorneys for KBI and listed Strumpf's office address and telephone number. Strumpf's name appeared above that of respondent. The judgment, which respondent prepared for the court's signature, also bore Strumpf's name, office address, and telephone number.

The final order and judgment, dated June 18, 1996, provided for the payment of the $12,132.84 debt, and $7,144.08 in interest, plus $13,431.25 in counsel fees, for a total of $32,708.17. The counsel fee award was based on Strumpf and respondent's certifications listing their time spent on the case. According to Strumpf, despite the $13,431-counsel fee awarded, she informed KBI that she was going to honor their agreement for 25% of $32,000 and that KBI should keep the balance. On March 25, 1996, Strumpf's office issued an $800 check to respondent to cover his four-day appearance at the trial. Strumpf asked respondent to continue working on the case by executing on the judgment. His remuneration for those services continued to be on a per diem basis.

On the same day that the final order and judgment was signed, respondent sent a fax to Hal Siegel, Strumpf's husband and office manager, wherein respondent attempted to renegotiate his counsel fees with Strumpf, due to what he described as a "windfall" from the court's award of attorney's fees. Siegel responded that Strumpf was not really getting a windfall because she worked on a contingency fee basis in all her cases with no guarantee of payment. Siegel also reminded responded that he had not taken that risk himself since he agreed to get paid regardless of the outcome of the case. Still, Siegel told respondent that Strumpf was willing to pay him "extra money" once she got paid.

The next document that respondent prepared in the Sepenuk case was a writ of execution, dated July 16, 1996. That document also identified Strumpf and respondent as attorneys for KBI and listed Strumpf's office address and phone numbers. The writ commanded the sheriff to satisfy the $32,708.17 judgment out of property belonging to Sepenuk and to "pay the monies realized from such property to KBI Security Services, Inc. or to Linda Strumpf and William N. Stahl, attorneys for plaintiff in this action."

After the judgment was signed, Strumpf called respondent constantly to find out if he had collected the amount of the

judgment. According to Strumpf, respondent's reply was always that he was "working on it." However, unbeknownst to Strumpf, on August 23, 1996, Sepenuk wrote a check for the full amount of the judgment, $32,708.17 payable to respondent. Respondent deposited the check in what he called "a special account" and disbursed the entire proceeds directly to KBI. Shortly thereafter, respondent disclosed to Strumpf that he had received the check, that he had distributed it to KBI, and that he had taken his fee, $8,177.04, which represented 25% of the recovered amount in the Sepenuk matter. Subsequently, in September 1996, when Strumpf wrote to Robert King, demanding her 25% fee, his reply was, simply, "[y]ou're discharged."

After returning the file to KBI, Strumpf sued respondent in New Jersey Superior Court for recovery of her contingency fee in the Sepenuk matter. The action, *Strumpf v Stahl*, was ultimately tried before Judge Jack Kirsten in March 1998. At the trial, respondent testified that, on the first day of the Sepenuk trial, March 19, 1996, Stuart King had fired Strumpf and engaged him as KBI's attorney. Respondent, however, acknowledged to the trial judge that, notwithstanding his new position as KBI's sole counsel, he continued to bill Strumpf on a per diem basis for his services on behalf of KBI and accepted her payment. His explanation was that he had done it in order to continue his relationship with Strumpf. Stuart King testified at the trial and corroborated respondent's testimony.

At the end of the two-day trial, Judge Kirsten found "the testimony of respondent and King about the alleged firing of [Strumpf] on March 19, 1996" to be "incredible." Instead, the court found respondent's behavior after the purported firing to be "totally consistent with the view that [Strumpf] had not been discharged," noting that all the documents prepared by respondent after March 19, 1996 included Strumpf as the attorney of record. The court also found significant that respondent had accepted check payments from Strumpf for per diem work performed after March 19, 1996. The court concluded that respondent violated his duties to Strumpf by improperly converting the entire case file and fees for himself and, therefore, entered judgment against respondent for $8,177.04, plus prejudgment interest, representing 25% of the recovered amount in the Sepenuk matter.

During the disciplinary hearing before DEC, respondent testified that his trial testimony in *Strumpf v Stahl* had been in error because he had been unprepared and confused as to the rel-

evant time periods. He then claimed that he was not hired by KBI until the middle of 1996, despite the fact Stuart King and he had previously testified at the *Strumpf v Stahl* trial that he was hired on the first day of trial on March 19, 1996. Specifically, respondent alleged that on or about July 15, 1996, Stuart King called him expressing dissatisfaction with Strumpf and a desire for him to take over the representation of KBI. Respondent testified that he agreed to take over the case and immediately prepared a letter for Stuart King to sign, confirming their conversation and providing for the amount of his and Strumpf's compensation. The letter, dated July 15, 1996 and addressed to respondent, read as follows:

> "This is to advise you that KBI Security Services, Inc. and myself are appointing you to act as attorney for KBI in the [Sepenuk] matter. You are to proceed as sole counsel and not in connection with the law offices of Linda Strumpf. We are instructing you to act on behalf of the company in the above matter in [as] expeditiously a manner as possible.
>
> "In the event you are able to effect a recovery from Sepenuk & Sons, Inc., you are instructed to pay Linda Strumpf the total amount of $6,715 in total payment of her attorney's fees for this matter. It was originally anticipated that Ms. Strumpf was to have been paid approximately $3,000 for her efforts in this matter. It is my feeling that this settlement for her is more than generous."

Respondent, however, never forwarded the letter to Strumpf, who testified at the DEC hearing that she learned about it only when she read respondent's appeal from the trial court's decision in her suit against him. Instead, on August 26, 1996, three days after respondent received the $32,708.17 check from Sepenuk, respondent prepared the following letter for Stuart King's signature:

> "Dear Bill:
>
> "You were previously instructed to pay Linda Strumpf the total amount of $6,715 in total payment for all their attorneys' fees in this matter. You are further instructed to pay to Stuart King the amount of $19,264.92, that being the amount of the judgment of $12,132.84, interest in the amount of $7,144.08, less $7.00 for the bank check fee and

$5.00 for the Writ of Execution. Pay the remaining amount of $6,720 to yourself as an attorney's fee to you."

Instead of forwarding $6,715 to Strumpf, as directed in the letter, respondent gave the entire $32,708.17 to KBI because, he said, "it was their money" and because he "wanted to make it absolutely clear [he] wasn't withholding money or strongarming anybody. KBI was doing it. It was KBI's decision." As noted above, KBI then issued him a check for his $6,720 fee. Strumpf got nothing.

Following the de novo review of the record, the Review Board found that "the overwhelming circumstantial evidence in the case add to the conclusion that both respondent and King testified falsely." Furthermore, the following considerations, among others, convinced the Review Board that "respondent was never retained by KBI, that he continued to work for Strumpf, and that, later, he and King embarked on a course of conduct designed to legitimize" respondent's improper receipt of Strumpf's fee: (1) respondent never filed a substitution of attorney; (2) he did not disclose to Strumpf that he had replaced her as KBI's attorney; (3) he accepted an $800 payment from Strumpf for his four-day appearance at the trial; (4) his fax to Strumpf's husband, in which he proposed that he "keep the [fee] award as it relate[d] to [his] time," was an obvious acknowledgment that the entire fee award belonged to Strumpf, who would decide whether to give him the requested bonus; (5) after the Sepenuk trial, he continued to file court documents with Strumpf's name as KBI's attorney and with her office address and phone number; even the July 16, 1996 writ of execution, which he prepared one day after he was allegedly retained by KBI, listed Strumpf as KBI's attorney; (6) his explanation that the letterhead was "old" and that he had neglected to remove Strumpf's name from it does not ring true; Strumpf's name on the "letterhead" was not the only indication of her continuing representation; the body of the writ commanded the sheriff to forward to Strumpf the proceeds of the execution; and (7) until July 15, 1996, he continued to accept Strumpf's payments.

Based upon the aforementioned factual findings, the Review Board concluded that respondent violated: RPC 3.3 rule (a) (1) and RPC rule 8.4 (c) by falsely testifying before the trial judge that KBI had terminated Strumpf's representation and hired him as its counsel; RPC rule 3.3 (a) (4) and RPC rule 8.4 (c) by

presenting the false testimony of Stuart King on that same issue; and RPC rule 1.15 (b) by not notifying Strumpf of his receipt of the funds and delivering them to her but, instead, releasing them to Stuart King.

With regard to the determination of an appropriate sanction, the Review Board considered several aggravating factors. Primarily, the Review Board took into account that respondent fabricated the July and August 1996 letters for use in the disciplinary proceedings and provided King's false testimony to the Civil Court to corroborate his false claim that he had been retained by KBI. Such misconduct, in the Review Board's view, could have sustained other serious RPC violations, with which respondent was not charged. Nevertheless, the Review Board considered them as aggravating factors. The Review Board considered other aggravating factors: respondent's lack of disclosure to Strumpf of his receipt of the judgment amount and subsequent disbursement to KBI; his seizure of Strumpf's fee, forcing her to file a suit against him to recover her fee; his prior encounter with the disciplinary system (an admonition in 2004); his refusal to acknowledge any wrongdoing; the absence of any remorse for his actions; his aim at self-benefit; and his lack of understanding of a lawyer's professional obligations. Conversely, the Review Board determined that the only mitigating factors were the passage of 12 years since respondent's serious improprieties and the inordinate delay in the processing of this disciplinary matter.[3]

As a result of these findings of fact and conclusions of law, the Review Board recommended to the Supreme Court of New Jersey that respondent be suspended for a year, while also requiring respondent to reimburse the administrative costs and actual expenses incurred in the prosecution of this matter. Thereafter, in February 2009, two months after the Review Board issued its decision recommending a one year suspension, respondent, through counsel, submitted to the court a motion for leave to file an untimely notice of petition and petition for review as timely made. Respondent's petition sought rejection of the Review Board's decision, or, alternatively, to remand back

---

**3.** The grievance was first docketed in New Jersey in September 1998. Presumably, the matter was placed on "untriable status" because of the pendency of Strumpf's suit against respondent. For some unexplained reason, the grievance was redocketed in December 2004, six years after the 1998 trial. The formal complaint was not filed until December 2005 and the answer in April 2006. The DEC hearing took place in November 2006, and the Review Board's decision was issued in December 2008.

to the DEC for a further hearing. In essence, respondent's grounds for such relief were primarily that the Review Board improperly refused to consider the Stuart King certification or grant remand so that King could testify; and that any errors in his own testimony were inadvertent and not intentional. By order dated March 24, 2009, the Supreme Court of New Jersey denied respondent's petition. By an order dated March 26, 2009, the Court adopted the recommendations of the Review Board, and suspended respondent for one year.

The Departmental Disciplinary Committee now seeks an order finding respondent guilty of misconduct, pursuant to 22 NYCRR 603.3, based upon the findings of misconduct made in the New Jersey disciplinary proceeding. New York's reciprocal discipline rule provides that upon a showing of the imposition of a disciplinary sanction in a foreign jurisdiction, the only defenses that may be raised by a respondent are: (1) a lack of notice constituting a deprivation of due process; (2) an infirmity of proof presented in the foreign jurisdiction; or (3) that the misconduct for which the attorney was disciplined in a foreign jurisdiction does not constitute professional misconduct in this state (22 NYCRR 603.3 [c]; *Matter of Whitehead*, 37 AD3d 86 [2006]; *Matter of Meaden*, 263 AD2d 67 [1999]). Respondent has cross-moved to dismiss the petition or, alternatively, for a hearing.

Respondent's opposition papers establish none of these defenses. Instead, they are primarily focused on relitigating the New Jersey disciplinary proceedings. Respondent's main contention, that he was deprived of due process due to DEC's refusal to accept King's certification, was raised in the context of the New Jersey proceedings and resolved against him, and that factor alone is sufficient to reject the contention herein (*see Matter of Dranov*, 14 AD3d 156 [2004]). In any event, the Review Board acted properly when it refused to accept Kings's certification or grant a remand so that he could testify.

Moreover, viewed in its totality, it cannot be said that the procedure employed in the State of New Jersey "was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process" (22 NYCRR 603.3 [c] [1]). Indeed, it is undisputed that respondent was represented by counsel from the inception until the final hearing date. He fully participated in the disciplinary proceedings by answering the charges, attending the hearing, testifying on his own behalf, submitting documentary evidence, and filing a petition for review before the Supreme Court.

Nor has respondent made any showing that the factual findings in the New Jersey disciplinary proceedings suffered from an infirmity of proof (22 NYCRR 603.3 [c] [2]). As outlined in the 59-page thorough decision of the Review Board and summarized above, the record developed at the civil trial and at the ethics hearing clearly and convincingly established that Strumpf was never fired by KBI; that respondent continued to work in the Sepenuk case; and that respondent engaged in a course of conduct intended to confirm an attorney-client relationship that never existed to justify his retention of the attorneys' fees due to Strumpf, pursuant to the KBI contingency fee agreement.

Finally, the Committee has persuasively demonstrated that the various instances of misconduct by respondent for which he was disciplined in New Jersey would also constitute misconduct in New York (*see* 22 NYCRR 603.3 [c] [3]).

As to the issue of an appropriate sanction, it is generally accepted that the state where an attorney lived and practiced law at the time of the offense has the greatest interest in the matter and in the public policy considerations relevant to the disciplinary action (*Matter of Rogge*, 51 AD3d 367, 369 [2008]; *Matter of Jacoby*, 42 AD3d 196, 197 [2007]; *Matter of Milchman*, 37 AD3d 77, 79 [2006]; *Matter of Dranov*, 14 AD3d 156, 163 [2004]). We have consistently held that "great weight should be accorded to the sanction administered by the state where the charges were originally brought" (*Matter of Rogge* at 369, citing *Matter of Gentile*, 46 AD3d 53, 55 [2007]; *Matter of Harris*, 37 AD3d 90, 93 [2006]).

Although respondent failed to notify us of his discipline in New Jersey as required by 22 NYCRR 603.3 (d), the Committee does not urge a greater sanction based upon this failure. Moreover, the one-year suspension imposed by New Jersey is not strikingly inconsistent with other reciprocal discipline cases with similar levels of misconduct (*see e.g. Matter of Yagman*, 263 AD2d 151 [1999] [reciprocal one-year suspension where attorney failed to promptly pay funds to client; failed to render appropriate accounting, commingled and misappropriated funds; entered into an illegal fee agreement and collected an unconscionable fee]; *Matter of Kraus*, 253 App Div 641 [1938] [one-year suspension where attorney failed to return money under a retainer agreement and endorsed name of client on checks for small amounts without authority]; *cf. Matter of Jarblum*, 51 AD3d 68 [2008] [two-year suspension where attorney failed to promptly deliver funds in his possession to the client and instead

transferred funds into his personal account and used the money for his personal benefit]).

For the foregoing reasons, the petition for an order pursuant to the doctrine of reciprocal discipline should be granted (*see* 22 NYCRR 603.3), and respondent's cross motion denied, and respondent suspended from the practice of law in the State of New York for a period of one year and until further order of this Court.

GONZALEZ, P.J., MAZZARELLI, SWEENY, RENWICK and RICHTER, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of one year, effective the date hereof and until further order of this Court. Cross motion denied.